# EXHIBIT I

EEOC FORM 131 (5/01)

## U. S. Equal Employment Opportunity Commission

|  |  |
|---|---|
| GREG HILL<br>SR. VP HUMAN RESOURCE<br>COLONIAL INVESTMENT SERVICES<br>32 COMMERCE STREET<br>MONTGOMERY, AL 36104 | PERSON FILING CHARGE<br><br>Susan Guy<br><br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br><br>EEOC CHARGE NO.<br>130-2005-03842 |

### NOTICE OF CHARGE OF DISCRIMINATION
(See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act      [ ] The Americans with Disabilities Act

[X] The Age Discrimination in Employment Act      [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **20-MAY-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Arthur L. McGhee,
Enforcement Supervisor
_EEOC Representative_
Telephone: **(205) 221-2067**

**Birmingham District Office**
**Ridge Park Place**
**1130 22nd Street, South**
**Birmingham, AL 35205**

Enclosure(s): [X] Copy of Charge

| CIRCUMSTANCES OF ALLEGED DISCRIMINATION |
|---|
| [ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [X] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER |

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Apr 21, 2005 | Bernice Williams-Kimbrough,<br>District Director | _Bernice Williams-Kimbrough_ |

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14 Preservation of records made or kept.** ..... Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | [ ] FEPA<br>[X] EEOC | 130-2005-03842 |

_____ and EEOC
State or local Agency, if any

| NAME (indicate Mr., Ms., Mrs.) Mrs. Susan Guy | HOME TELEPHONE (include area code) (334) 569-2567 | |
|---|---|---|
| STREET ADDRESS<br>974 Lewis Road | CITY, STATE AND ZIP CODE<br>Deatsville, AL 36022 | DATE OF BIRTH<br>March 14, 1960 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME<br>Colonial Bank and Colonial Investment Services, Inc. | NUMBER OF EMPLOYEES, MEMBERS<br>Greater than 20 employees | TELEPHONE (Include Area Code)<br>334-240-5000 |
|---|---|---|
| STREET ADDRESS<br>1 Commerce Street | CITY, STATE AND ZIP CODE<br>Montgomery, AL 36104 | COUNTY<br>Montgomery |

| NAME | TELEPHONE NUMBER (Include Area Code) | |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))<br><br>[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [X] AGE<br>[ ] RETALIATION   [ ] NATIONAL ORIGIN   [ ] DISABILITY   [ ] OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ADEA/EPA)   LATEST (ALL)<br>2002              January 18, 2005<br>[X] Continuing action |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The particulars of my charge are set forth in the attached affidavit.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>4/11/05       /s/ Susan Guy<br>Date        Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME ON THIS DATE (DAY, MONTH, AND YEAR) |

EEOC FORM 5 (Test 10/94)

## AFFIDAVIT OF SUSAN GUY

STATE OF ALABAMA )
MONTGOMERY COUNTY )

Personally appeared before me, the undersigned Notary Public in and for the State of Alabama at Large, Susan Guy, who is known to me and who, being duly sworn, deposes and says on oath as follows:

My name is Susan Guy. I am over the age of nineteen (19) and this affidavit is based on my personal knowledge.

1. On January 18, 2005, I was unjustly terminated and replaced by a much younger and less experienced male. At the time I was terminated, I was 44 years old and I was an Assistant Vice President of Colonial Bank and Vice President of Colonial Investment Services, Inc. In addition, I was the Family Insurance Manager of Colonial Bank's Family Insurance Department, and the Platform Manager[1] and Insurance Director of Colonial Investment Services, Inc., all of which involved insurance sales and marketing.

2. As of January 18, 2005, I had been working in banking and financial services, including insurance, for approximately twenty-four (24) years and throughout my career I received good and/or excellent reviews. My first five years, from 1981 to 1986, I worked at First Alabama Bank as a Credit Specialist. The rest of my career in banking and financial services has been with Colonial Companies or Colonial Bank.[2] There, I spent sixteen (16) years working in a supervisory

---

[1] As Platform Manager, I was responsible for fixed annuity sales and life insurance sales by Platform agents at each Colonial Bank branch in every state where Colonial Bank operated.

[2] In 1994, Colonial Companies split and my job responsibilities were transferred to Colonial Bank, which at that time was an affiliate of Colonial Companies.

capacity, mostly with insurance sales.

3.  In 1986, I was hired by Colonial Companies to work for two of its sister companies, namely, American Colonial Life Insurance Company and American Colonial Insurance Company. There, I handled the insurance coverage for mortgage, consumer and commercial loans issued by Colonial Bank.

4.  At American Colonial Life Insurance Company I, among other things, underwrote certificates for insurance from a medical perspective; accepted or declined coverage for loans; processed premium payments; performed regulatory reporting with Colonial Companies' insurance accounting department; adjusted and paid life insurance claims and disability claims; and interacted with the departments of insurance in each state where Colonial Bank did business to ensure that its limited insurance producers were properly licensed and acting in compliance with applicable state laws with regard to selling insurance products through local branch banks. With regard to work I performed for American Colonial Insurance Company, I tracked the "forced placed" policies[3] and was involved in making decisions about whether or not coverage applied to certain individuals.

5.  In 1988, American Colonial Life Insurance Company promoted me to the position of Production Supervisor over Colonial Bank's insurance programs where I continued to receive good and/or excellent reviews. In 1995, I was again promoted, this time to assistant manager over the Family Insurance Department, which was a newly created department within Colonial Bank. There, I continued to perform my above referenced job duties but with additional supervisory responsibilities.

---

[3] "Forced placed" policies were policies where banks provide insurance and incorporate the amount of the insurance into the loan and into the premium payments.

-2-

6. My responsibilities were subsequently expanded to that of a Loan Officer for Personal Banking Services, which was also a newly created department within Colonial Bank.[4] As a Loan Officer I, among other things, reviewed loan applications, credit reports, appraisals, approved loans and prepared closing packages. I also functioned as the manager on duty in Personal Banking Services when that manager was not available.

7. Around 1997 I was promoted from assistant manager to manager over the Family Insurance Department. I also became an Assistant Vice President of Colonial Bank.

8. In 2000, I was promoted to the newly created position of Platform Manager[5] with Colonial Investment Services, Inc.,[6] which came with new and additional responsibilities. I continued to be the Family Insurance Manager of Colonial Bank and perform all of the above referenced supervisory responsibilities related to the same.

9. As the Platform Manager, I was responsible for, among other things, ensuring that Colonial Investment Services, Inc.'s employees and Colonial Bank's employees complied with state laws with regard to selling insurance; that Platform agents became properly licensed and trained; and that the sales of fixed annuities and life insurance increased through these licensed platform agents. In the course of carrying out these job responsibilities, I developed and presented the majority of necessary training material and initiated and assisted in developing the insurance sales compliance

---

[4] Personal banking services' primary purpose was to market home equity lines of credit to Colonial Mortgage Company's customers.

[5] As Platform Manager I was responsible for ensuring that Colonial Bank employees became fully licensed to sell insurance products for Colonial Investment Services, Inc. in all states where the bank operated.

[6] Colonial Investment Services, Inc. is a subsidiary of Colonial Bank.

manual that is still being used at Colonial Bank.

10.     Nevertheless, despite my numerous above referenced responsibilities as Platform manager, at least two male brokerage sales managers, who had fewer responsibilities for Platform sales than I, were paid a higher bonus, i.e., override, based on the volume of Platform sales. Additionally, at least one of their male assistants was also paid a higher bonus than I on Platform sales.

11.     During the four and a half years I was the Platform Manager, the fixed annuity sales grew from $13 million in 2000 to more than $140 million in sales in 2004. The number of licensed platform agents grew from approximately 100 agents in the year 2000 to between 300 and 400 agents in the year 2004. I also oversaw the development and implementation of training and licensing programs for licensed insurance agents.

12.     In 2002, I became a Vice President of Colonial Investment Services, Inc., and later, in 2003, I was also named Insurance Director of Colonial Investment Services to better reflect the responsibilities that I had been performing. I would note that I continued to be an Assistant Vice President of Colonial Bank in addition to the Family Insurance Manager for Colonial Bank and the Platform Manager for Colonial Investment Services, Inc. It was in 2003 that my job responsibilities were expanded to include the development of Colonial Investment Services, Inc.'s insurance specialist's program, the purpose of which was to hire and train employees whose jobs were to market higher end insurance products.

13.     From 2003 through January 18, 2005 I was performing the job responsibilities of Family Insurance Manager, Platform Manager and Insurance Director, all of which were commonly referred to as "Platform and Insurance Manager." My job duties as Platform and Insurance Manager

included, but were not limited to, coordinating training for Platform agents, sales reporting, sales meetings and marketing and managing relationships with vendors. These were the same job responsibilities that were assigned to my replacement, Sean Tesoro, on January 18, 2005.

14. As noted above, I was replaced on January 18, 2005 by Sean Tesoro, who was a much younger male with much less seniority and experience than I. On January 18, 2005, I was terminated and Tesoro was promoted to the newly created position of Sales and Service Manager. As Sales and Service Manager, Tesoro was assigned my job responsibilities, i.e., coordinating training, sales reporting, sales meetings and marketing and managing relationships with vendors.[7] To my knowledge, prior to joining Colonial Brokerage in April 2004, Tesoro had never worked for a banking institution, much less marketed insurance for a banking institution.

15. Without any forewarning, on January 18, 2005, I was told that my job had been eliminated due to a reorganization or restructuring and that this would be my last day. Significantly, the only other employees whose jobs were allegedly eliminated during this so called "reorganization" or "restructuring" were three other females, all of whom were over forty (40) years of age and whose job responsibilities were given to younger and less experienced males.

16. The conversation terminating my nineteen (19) years of continued employment was abrupt and cold, although the senior manager of Colonial Investment Services, Inc., Linda Green, did thank me for all I had done for Colonial over the years. My embarrassment and humiliation at being treated in this fashion was magnified after I was told that a decision was made not to hire me

---

[7] Tesoro was also responsible for the Fixed Annuity help desk, which was created to answer platform agents' questions. Previously, platform agents had directed their questions to employees under my supervision and these employees were subsequently assigned to the Fixed Annuity Help desk.

for other jobs in my area of expertise. At no time that day did anyone indicate that my job performance had anything to do with Colonial Bank's refusal to allow me continued employment. Moreover, I had received positive feedback regarding the manner in which I performed my job as Platform and Insurance Manager, particularly since the fixed annuity program remained profitable under my leadership even after the stock market fell following September 11, 2001.

17. Clearly, I have been the victim of age discrimination under the ADEA, and but for Colonial's willful and/or reckless disregard for the same I would still have my job or a similarly situated position. In light of the foregoing, I also believe that I have been the victim of sex discrimination in violation of Title VII.

*Susan Guy*
Susan Guy

STATE OF ALABAMA      )
MONTGOMERY COUNTY     )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that **Susan Guy**, whose name is signed to the foregoing affidavit, and who is known to me, acknowledged before me on this day that she does swear the foregoing affidavit is true and correct, and that she executed the same voluntarily on this date.

SWORN TO AND SUBSCRIBED BEFORE ME this 11th day of April, 2005.

*Sharon Duke*
NOTARY PUBLIC

My Commission expires: 5-24-07