# EXHIBIT A

AFFIDAVIT OF SUSAN GUY

STATE OF ALABAMA       )
                       )
ELMORE COUNTY          )

Before me, a notary public in and for said state and county, personally appeared Susan Guy, after being first duly sworn, deposes and says as follows:

1. My name is Susan Guy. I am a resident of Alabama. I was formerly employed by Colonial Bank, N.A. and Colonial BancGroup, Inc. from June 30, 1986 until my employment was terminated on January 18, 2005.

2. I am authorized to make this affidavit and I am competent to testify at trial regarding the statements made herein in support of my response in opposition to Colonial's motion for summary judgment regarding the lawsuits filed against Colonial Bank, N.A. and Colonial BancGroup, Inc.

3. I am currently 46 years old. I was 44 years old on January 18, 2005 when my employment was terminated, without any forewarning, in favor of a younger and less experienced male, Sean Tesoro.

4. On March 31, 2004, Rana Sanders, Executive Vice President of Wealth Management and President of Colonial Brokerage and Colonial Investment Services, Inc. resigned her position for personal health reasons. Linda Green was later promoted to Director of Wealth Management in June, 2004.

5. As of January 18, 2005, I had been employed with Colonial in various positions of increasing responsibility for 19 years. Prior to joining Colonial, I worked in banking at First Alabama Bank for 5 years. Ultimately, I had 24 years of banking

experience and, at the time of my termination, I held the positions of Family Insurance Manager, Platform Manager and Insurance Director, more commonly known as Platform and Insurance Manager. 16 of my 19 years with Colonial I worked in a supervisory capacity and I was Vice President of Colonial Investment Services, Inc., the bank's licensed insurance agency subsidiary, at the time of my termination.

6. On January 18, 2005, Linda Green, Executive Vice President of Wealth Management, along with Tara Gibson of Human Resources, met with me and informed me that my position was being eliminated in a restructuring or reorganization of the Wealth Management Department. Along with my position, 3 other positions were reportedly eliminated. Notably, all of these positions were held by women over the age of 40 and all were replaced with much younger males. It was during this interview that Linda Green advised me that there had been a new position created entitled Sales and Service Manager for which she had considered me, however; she stated she had elected to give this position to someone else. There was no explanation as to why she had elected to give this position to someone else. It was in a memo dated January 18, 2005 that Linda Green announced that Sean Tesoro, a much younger and less experienced male, had been promoted to a new job titled Sales and Service Manager and described duties that mirrored those of my position. It was later that I learned that Linda Green and Andy Rippy, State Brokerage Sales Manager for Alabama, over the previous month or more, had been quietly soliciting select males to fill the positions that they contended had been eliminated. This is substantiated by the

admission by Sean Tesoro that he was approached in early December, 2004 by Andy Rippy regarding a position titled Regional Sales and Development Wholesaling Officer and then a position titled Sales and Service Manager.

7. At no time prior to January 18, 2005 was the Sales and Service Manager position posted as an open position to allow interested employees the opportunity to apply and interview for this position.  This is outside of the normal and customary procedure for posting jobs in the Colonial system and prevented me from applying for this position, thereby denying me an opportunity for promotion. Although Colonial claims it "eliminated" these positions, this is obviously not true and standard procedures for reorganization were not followed.  It is notable that it was not until after I filed an EEOC claim of discrimination under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 that Colonial announced to its brokerage back office an impending reorganization that ultimately went into effect in September, 2005, *eight months* after my employment was terminated.

8. At the time of my termination, it was a well known fact that I was studying to take the NASD Series 7 exam in order to obtain NASD licensing and that this was a personal goal of mine.  Linda Green, Director of Wealth Management, had also begun to study for the NASD Series 7 exam in an effort to satisfy the extensive licensing requirements of her newly appointed position for which she had neither the investment experience (7 – 10 years required and she had none) or the requisite licensing (at least 4 NASD licenses).  I was never instructed that NASD

licensing had become a requirement of my job and was a condition of my employment.

9. In my capacity as Platform and Insurance Manager, I was responsible for the following duties:

- Manage, develop and implement all insurance programs for Colonial Bank, including fixed annuities, life insurance, long term care insurance, disability insurance, builders' risk insurance, credit insurance, mortgage insurance, etc.;

- Develop, design, market and implement growth initiatives in various areas of wealth management with a concentration on Colonial Investment Services, Inc., a licensed insurance agency subsidiary of Colonial Bank;

- Develop and coordinate training related to wealth management, including licensed bankers regarding the sale and marketing of various lines of life insurance, long term care insurance and fixed annuities, and training Financial Consultants regarding the sale of various lines of life insurance and fixed annuity products, including advanced market sales for financial planning and trust;

- Creation and implementation of expanded licensed banker program to include limited NASD products (limited mutual fund and variable annuity products) and single premium life insurance products;

- Coordination of sales activities for dedicated insurance specialists to include partnership and referral programs with Private Banking, Trust, Cash Management and Commercial Lending to maximize relationships with existing bank customers and develop new customer relationships;

- Maintain and grow relationships with current product providers as well as potential new product providers;

- Negotiate new contracts and selling agreements with product providers and vendors, including marketing support, income enhancement (basis point overrides) and routinely monitor and review existing selling agreements for enhancements as needed;

- Direct and supervise an internal support staff of wealth management employees, a staff of outside dedicated insurance sales agents and a staff of platform and insurance trainers/directors;

- Develop and maintain relationships with various retail bank divisions to enhance promotion and marketing of insurance and annuity programs in branch banks and to foster communication to branch and regional administration;

- Plan, coordinate and implement sales contests and campaigns in partnership with retail banks and product providers to enhance sales efforts and revenue growth;

- Develop, implement and maintain compliance program for all insurance products, including life insurance and fixed annuities as well as advanced markets programs;

- Coordinate and implement compliance review for all written fixed annuities, including monitoring of risk tolerance and investment objectives to protect bank from liability risk in sales;

- Responsible for sales reporting and quarterly review and announcement of top producers as well as top referrers from retail bank in select programs;

- Responsible for oversight of credit insurance programs for installment and commercial lending and mortgage lending, including sales tracking and reporting and training of branch and department personnel to enhance growth
- Develop, implement and coordinate monthly conference calls with licensed agents, financial consultants and regional management to enhance growth initiatives and sales efforts;
- Develop, implement and coordinate all direct mail insurance program offers to retail bank deposit customers to enhance revenue growth;
- Continually monitor regulatory issues to coordinate compliance manual updates with legal staff on a routine basis;
- Work with bank marketing department to develop marketing materials, sales flyers, branch signage, and other initiatives and contests to enhance sales growth;
- Coordinate branch referral programs and call events to enhance referrals to Financial Consultants and generate new prospects for licensed bankers;
- Coordinate and oversee ongoing sales support for licensed branch agents through wealth management back office staff;
- Monitor licensing renewal and compliance issues relative to all insurance licensed employees, including licensed bankers and financial consultants;
- Travel to all regions of the bank to meet with regional management to develop cooperative efforts to enhance growth initiatives in wealth management programs.
- Development of a proprietary, private label fixed annuity program as well as a co-branded program.

One of my most notable achievements as platform and insurance manager was that of creation of the private label fixed annuity program. In conjunction with AIG, I developed a superior fixed annuity product that was private label branded with AIG as Colonial's own proprietary fixed annuity. This product, called The Colonial Capital Accumulator, was very competitive and realized about $100,000,000 in sales from the time it rolled out on October 14, 2002 until my termination on January 18, 2005. Additionally, in conjunction with Mass Mutual, I was responsible for the co-branding initiative of the Mass Mutual Odyssey V fixed annuity product that yielded the sales success referenced in Sean Tesoro's affidavit. Tesoro was the wholesaler for Mass Mutual through whom we developed our co-branding program. Co-branding is a program that allows for dual logos to be reflected in the marketing material of a product that serves to increase customer confidence and enhance sales opportunities.

10. In November 2002 a Product Manager position was created and Ann Fuller transferred from her Financial Consultant position to the home office to fill this position. This position was responsible for research and development of new product initiatives, new product rollouts and coordination of new broker/financial consultant orientation and training. In this capacity, Ann Fuller coordinated with me to provide insurance and annuity training for all new Financial Consultants that were hired and to provide training for them on the structure of the platform program and their role in mentoring the licensed bankers in their assigned branches.

11. On April 13, 2005, I filed an EEOC charge of discrimination against Colonial Bank, N.A. and Colonial BancGroup, Inc. under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. As a member of the protected class who was adversely affected by an employment decision, was replaced by someone outside the protected class, was qualified to perform the job and has been able to establish satisfactory evidence that a fact finder could determine that Colonial did commit age and gender discrimination against me, I feel this charge was warranted and sufficient evidence has been presented to indicate there are material issues that warrant denial of defendants' motion for summary judgment.

FURTHER THE AFIANT SAYETH NOT.

_Susan H. Guy_
Susan H. Guy, Pro Se

SWORN TO AND SUBSCRIBED BEFORE ME on this the 20th day of September, 2006.

_____
Notary Public
My Commission Expires: **My Commission Expires 1/31/2010**