**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| SUSAN H. GUY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **vs.** | ) | **2:06 CV271-WKW** |
| | ) | |
| THE COLONIAL BANCGROUP, INC. | ) | |
| and COLONIAL BANK, N.A., | ) | **DRB Magistrate Judge Assigned** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S
MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO
DEFENDANTS ' MOTION FOR SUMMMARY JUDGMENT (Doc. No. 22)**

**COME NOW** Defendants, The Colonial BancGroup, Inc. and Colonial Bank, N.A.

(collectively, "Colonial"), and submit the following Memorandum of Law in Reply to Plaintiff's

Memorandum of Law in Support of Response in Opposition to Defendants' Motion for

Summary Judgment submitted by Plaintiff Guy on September 22, 2006. (Doc. no. 22).

## I.    INTRODUCTION

Colonial previously has established its entitlement of summary judgment on all of

Plaintiff's claims. Nevertheless, Plaintiff asserts numerous arguments in her Response Brief that

are either misleading or wholly unsupported by the evidence and which, therefore, compel this

additional reply. As will be further established herein:

- Plaintiff has failed to establish her *prima facie* case for her ADEA claim because she has not shown that she was "replaced" by a younger employee;

- Plaintiff likewise has failed to establish her *prima facie* case for any of her claims because she cannot show that she was qualified for the Program Director position;

- Even assuming, *arguendo*, that Plaintiff has establish a *prima facie* case for each of her claims, she has failed to establish that

1

each of Colonial's proffered legitimate, nondiscriminatory reasons for appointing Sean Tesoro rather than her to the Program Director position were a pretext for discriminating against her on the basis of her age or her gender; and

- Plaintiff has failed to submit any evidence, direct or otherwise, of discriminatory intent.

For all of these reasons, as well as those reasons set forth in Colonial's original summary judgment brief, Colonial is entitled to summary judgment on all of Plaintiff's claims as a matter of law.

## II.    ADDITIONAL ARGUMENT

### PART I – PLAINTIFF HAS FAILED TO SUSTAIN HER *PRIMA FACIE* CLAIMS.

**A.    PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE FOR HER ADEA CLAIM BECAUSE SHE WAS NOT REPLACED BY SEAN TESORO.**

It is well-settled law that in order to establish a *prima facie* case under the ADEA, the plaintiff must show, among other things, that she was replaced with a person outside the protected group. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002); *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064 (1990). Merely assuming *some* of the plaintiff's former duties does not, as a matter of law, establish a *prima facie* case under the ADEA. *See, e.g., Minton v. Am. Bankers Ins. Group, Inc.*, No. 02-12942, 2003 WL 21303330, *1 (11th Cir. Feb. 6, 2003) (affirming summary judgment for employer on ADEA claim that found employee was not replaced when coworker merely absorbed some of plaintiff's duties); *Edwards v. Baptist Health*, Civ. A. 204CV561AWO, 2005 WL 1331262, *8 (M.D. Ala. 2005) (holding that the mere fact that a younger employee assumed some of the plaintiff's former duties, was insufficient to establish a *prima facie* case under the

ADEA).[1]  Furthermore, "[c]onclusory allegations of discrimination, without more, are not

sufficient to raise an inference of pretext or intentional discrimination where [an employer] has

offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions."

*Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996)

(internal citations omitted).

In her Reply Brief, Plaintiff contends that Colonial merely re-titled her Family Insurance

Manager position as the Sales and Service Manager (now known as the Program Director

position)[2] in order to replace her with Sean Tesoro, a younger male.  Pl's. Resp. Br. (Doc. no.

22) at 2, 9.  In support of her argument, Plaintiff contends that, in his capacity as the Program

Director, Tesoro is performing the same duties she performed as Family Insurance Manager.  *Id.*

Other than her own conclusory assertions, Plaintiff offers ***no*** evidence to support that claim.  She

also fails to rebut the specific evidence set forth in Colonial's initial summary judgment brief and

evidentiary submissions in support thereof.

As set out in great detail in the affidavit of Linda Guy, Director of Colonial's Wealth

Management division, after extensive consultation with the Huntington Investment Company, a

well-respected and independent banking consulting firm, the Wealth Management division made

the decision to combine the functions of the Family Insurance and Product Management sections

---

[1]  *See also Stubblefield v. Trinity Indus., Inc.*, 961 F. Supp. 1553, 1558 (M.D. Ala. 1997) (*citing Barnes v. GenCorp. Inc.*, 896 F.2d 1457 (6th Cir.), *cert. denied*, 498 U.S. 878 (1990)) (holding a person is not replaced when another employee is assigned to perform that person's duties in addition to other duties); *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 988 (10th Cir. 1996) (stating that "the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position"); *Collier v. Budd Co.*, 66 F.3d 886, 890 n.5 (7th Cir. 1995) (holding that shifting and/or consolidating work does not constitute replacement); *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir. 1995) (during reduction in force, fact that plaintiff's duties were assumed by younger person is not in itself enough to establish *prima facie* case under ADEA).
[2]  Although the Wealth Management division originally announced that Sean Tesoro's position would be titled "Sales and Service Manager," the title eventually was changed to "Program Director" to better reflect the functions of the position.  *See* Supplemental Affidavit of Linda Green ("L. Green Supp. Aff."), Ex. M at ¶3.  The qualifications of and duties assigned to the position, by whatever title, have remained the same.  *Id.*  Because the title change occurred after Plaintiff Guy's termination, Colonial would not expect her to have knowledge of these facts.

into a single section responsible for all investment products to increase efficiency, revenues and profitability. L. Green Aff., (Doc. no. 17) at Ex. A, ¶¶19-20. Pursuant to this consolidation, Wealth Management eliminated certain positions and reassigned the duties of those positions to other jobs. *Id.* at ¶19. That is exactly the case *vis-à-vis* Plaintiff Guy because when Wealth Management eliminated the Family Insurance section, it also eliminated the Family Insurance Manager position held by Guy as well as the Product Manager position held by Ann Fuller. *Id.* Colonial ultimately reassigned most of the duties of both positions to the newly created Program Director position who, in addition to duties concerning insurance and fixed annuities, is also responsible for overseeing sales training and product support regarding the sale and marketing of NASD-regulated products, *e.g.*, stocks, bonds, mutual funds and variable annuities.[3] L. Green Aff. (Doc. no. 17) at Ex. A, ¶19. Thus, notwithstanding Plaintiff's unsubstantiated claims to the contrary, the Program Director position is not the Family Insurance Manager position by another title. Rather, it is the result of a consolidation of both the former Family Insurance Manager and Product Manager positions.

Contrary to Plaintiff's naked assertion, the undisputed affidavit testimony of Linda Green establishes that, in addition to his duties of overseeing training for Licensed Bankers who sold insurance and fixed annuities, as Program Director, Tesoro also is responsible for most of the NASD-related duties of the former Product Manager position, *e.g.*, overseeing sales training of Financial Consultants who primarily sold NASD-regulated products. L. Green Aff., (Doc. no. 17) at Ex. A, ¶¶19-20. As will be further discussed herein, although Guy may have been qualified to train Licensed Bankers and Financial Consultants regarding the marketing and sale of insurance and fixed annuity products, it is undisputed that she had *no* experience whatsoever

---

[3]   Variable annuities are securities regulated by the SEC. *See* http://www.sec.gov/answers/annuity.htm. Fixed annuities are not securities and are not regulated by the SEC. *Id.*

providing training to Financial Consultants regarding the sale and marketing of NASD regulated products and that she otherwise lacked the NASD licenses necessary to perform that function. Furthermore, as Program Director, Tesoro had responsibility for negotiating new and existing selling agreements with NASD product providers/vendors and for coordinating Wealth Management's partnership with UVEST Financial Services to provide clearance, settlement and custody services for Colonial customers. *See* Tesoro Aff. (Doc. no. 17) at Ex. K, ¶13.

In contrast, it is undisputed that in her capacity as Family Insurance Manager, Guy had *no* responsibilities regarding NASD products. In particular, she had no responsibility for overseeing the development or implementation of training and support regarding NASD licensed products or for coordinating and negotiating selling agreements for NASD licensed products; duties that are critical functions of the Program Director's job. L. Green Aff. (Doc. no. 17) at Ex. A, ¶¶7, 24, 25, 29. In fact, as previously noted, prior to the creation of the Program Director position, most of the NASD-related duties were assigned to the Product Manager position. *See* L. Green Supp. Aff., Ex. M at ¶5. As Family Insurance Manager, all of Guy's former job functions revolved around the "management, development, and implementation of *insurance programs*," not NASD regulated products. *See* Family Insurance Manager Job Description (Doc. no. 23) at Ex. L. Even assuming the accuracy of the list of her self-described duties as Family Insurance Manager set forth in her supplemental affidavit, the duties described therein compellingly demonstrate that Guy's position exclusively concerned life insurance and fixed annuity products and not NASD regulated products. *See* S. Guy Aff. (Doc. no. 22), Ex. A at ¶9. Nowhere in her Response Brief, in her affidavit or in her other evidentiary submissions does Guy establish, or even claim, that she performed the duties of the former Product Manager position or any duties related to NASD regulated products. Those duties were neither assigned to her as

5

Family Insurance Manager, nor could they be assigned to her in the absence of proper NASD licensing. L. Green Aff. (Doc. no. 17) at Ex. A, ¶¶ 7, 24-25, 29.

Furthermore, the fact that the Family Insurance Manager and Program Director are distinct and different positions is further established by Tesoro's undisputed affidavit testimony that NASD-related duties, *i.e.*, duties concerning stocks, bonds, mutual funds and variable annuities, constitute the overwhelming majority (60%) of the Program Director position. S. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶14. Plaintiff Guy, however, has never performed these duties, and she has offered no evidence to the contrary.

Notably absent in her response is any attempt by Plaintiff to compare the actual job descriptions of the two positions at issue. Instead, Guy attempts to rely on the brief description of the new position set forth in the January 18, 2005 memorandum drafted by Wealth Management Director Linda Green announcing the appointment of Tesoro (and others) to the new position (formerly titled the "Sales and Service Manager"). Response Br. (Doc. no. 22), at 6. In essence, Guy claims, without support, that the announcement somehow "defined" the duties of the position and that she performed those duties in her capacity as Family Insurance Manager.[4]  *Id.*  Guy Response Br. (Doc. no. 22), at 6.  However, the January 18, 2005 memorandum announcing Tesoro's appointment is merely an announcement and not a formal job description in any sense of the term. L Green Supp. Aff., Ex. M, at ¶4. Second, even the announcement cites Tesoro's "significant industry experience" with brokerage providers as a

---

[4] The language of the memorandum merely describes in general terms some of the functions of Sean Tesoro's new position: "The job includes the responsibility for coordinating training, sales reporting, sales meetings, marketing, managing relationships with vendors, and managing the soon to come Fixed Annuity help desk." 01/18/06 Memorandum (Doc. no. 22) at Ex. E. Unlike Guy's position as Family Insurance Manager, however, those duties, even generally described, would include overseeing the sales training of persons marketing and selling NASD licensed products, a function Guy never performed and could not perform in her capacity as Family Insurance Manager. *See* L. Green Aff. (Doc. no. 17) at Ex. A, ¶¶7, 24, 25, 29.

basis for his selection in addition to his experience regarding fixed annuities and insurance. 01/18/05 Announcement (Doc. no. 23) at Ex. E.

Moreover, the author of the announcement, Linda Green, specifically refutes Guy's conclusory allegation that the Family Insurance Manager position and the Program Director position are one-and-the same:

> 24.    Ms. Guy's allegation that Sean Tesoro merely assumed her former duties and is now performing the same job is incorrect. Although Mr. Tesoro has assumed some of Ms. Guy's former duties related to insurance and fixed-rate annuity products, those duties comprise only a portion of the Program Director's duties. Unlike the Family Insurance Manager, the new Program Director is responsible for duties requiring various NASD licenses and an extensive knowledge of NASD products.    In particular, the Program Director supervises the sales training and product support provided by two newly created Regional Sales and Development Wholesaler positions held by Cary Guffey and Tim Lewis. Consequently, the Program Director is required to hold certain NASD licenses and to be in good standing with the U.S. Securities and Exchange Commission and the National Association of Securities Dealers.

Green Aff. (Doc. no. 17) at Ex. A, ¶24.  Green's testimony stands unrebutted.

The actual job descriptions for the Program Director and the Family Insurance Manager position further illustrates the positions are different.  As noted above, the functions and duties of the Program Director are much broader than those of the former Family Insurance Manager position specifically because they include responsibilities relating to all investment products offered by Colonial Bank, including NASD licensed products such as stocks, bonds, mutual funds and variable annuities and not, as was the case of the Family Insurance Manager, duties related solely to insurance and fixed annuities.  That is precisely the reason why the Program Director job description includes minimum qualifications regarding NASD licensing and experience; whereas the job description for the Family Insurance Manager had no such requirement.  *Compare* Program Director Job Description, (Doc. no. 17) at Ex. E *with* Family

Insurance Manager Job Description (Doc. no. 23) at Ex. I.  Now, instead of two jobs with independent functions, a single Program Director oversees the marketing and sale of NASD products as well as insurance and fixed annuity products.  In sum, the creation of the new Program Director position reflects accomplished one of the primary goals of the Wealth Management restructuring – the elimination of unnecessary positions by consolidating positions and duties.  *See* L. Green Aff., (Doc. no. 17) at Ex. A, ¶6.

In sum, Plaintiff Guy's former responsibilities as Family Insurance Manager no longer constitute a single, distinct position.  Not only has Plaintiff failed to establish evidence to the contrary, but also, she has offered no evidence that Colonial's legitimate business purpose of restructuring its departments and consolidating two positions was a pretext for age discrimination.  Therefore, because she has failed to show that Sean Tesoro "replaced" her and performed her same job, Plaintiff cannot sustain her *prima facie* case under the ADEA.  For this reason, Colonial is entitled to summary judgment on Plaintiff's ADEA claim.

**B.    PLAINTIFF HAS FAILED TO SUSTAIN HER *PRIMA FACIE* CASE FOR ANY OF HER CLAIMS BECAUSE SHE WAS OBJECTIVELY UNQUALIFIED FOR THE PROGRAM DIRECTOR POSITION.**

Colonial is also entitled to summary judgment on all of Plaintiff's claims because she was objectively unqualified for the Program Director position.  In order to sustain her case under Title VII, the ADEA or as a failure to promote claim, Plaintiff must show, among other things, that she was qualified to do the job.  *See e.g.*, *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064 (1990) (*prima facie* case under the ADEA required the plaintiff to establish that she was qualified for the position at issue); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that plaintiff must establish that she was qualified to do the job to sustain her *prima facie* case under Title VII);

*Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (holding that in a failure to promote claim, to sustain a *prima facie* case, the plaintiff must establish that she was qualified for the position). Furthermore, to demonstrate that she was qualified for the position, Plaintiff must show that she satisfied the employer's objective qualifications. *See Vessels v. Atlanta Independent School System,* 408 F.3d 763, 769 (11th Cir. 2005); *see also Roper v. Foley,* No. 05-15149, 2000 WL 1004377, slip op. at *5 (11th Cir. April 18, 2006); *King v. Publix Supermarkets, Inc.*, No. 1:05-cv-486-WSD-ECS, 2006 WL 2166729, slip. op. at *5 (N.D. Ga. July 28, 2006). In the absence of that evidence, Colonial is entitled to summary judgment on all of Plaintiff's claims as a matter of law. In this case, it is a binary analysis. Guy was either qualified or she was not.

Notwithstanding her unsupported assertions, Plaintiff Guy has failed to rebut Colonial's evidence that objectively she lacked both NASD licensing and the knowledge and experience of NASD regulated products necessary to perform the duties of the Program Director. In particular, as established by Colonial in its initial summary judgment brief, the majority of the Program Director's duties (60%) involve NASD-related issues, *e.g.,* overseeing development and coordination of sales training and product support for Colonial's NASD licensed Financial Consultants, negotiating new and existing selling agreements with product vendors, and coordinating trade settlement procedures with UVEST Financial Services. S. Tesoro Aff. (Doc. no. 17) at Ex. K. ¶¶13-14.

Based on these undisputed facts, Colonial concluded that certain "NASD licenses and an extensive knowledge of NASD products", as well as a record of good standing with the Securities and Exchange Commission and the National Association of Securities Dealers, were essential minimum qualifications of the Program Director position. *See* L. Green Aff. (Doc. no.

17) at Ex. A, ¶24. Consequently, Wealth Management Director Linda Green, with the assistance and recommendation of the Huntington Investment Company, created and approved the Program Director job description, which specifically established the NASD licensing and experience requirements:

### Education and Experience

Bachelor's degree in Finance, Accounting, Business. Seven or more years sales of investment experience. Bank brokerage experience and experience with product providers a plus. ***Completion of Series 7, 65, 24, and 63 securities examinations***[5]; completion of Life/Health/Disability and Variable Life insurance License; clean CRD—***good standing with NASD and SEC***.

Program Director Job Description (Doc. no. 17) at Ex. E (emphasis added); L. Green Aff. (Doc. no. 17) at Ex. A, ¶24. Plaintiff's success or failure in meeting the licensing and good standing requirements is an objective fact. Contrary to Plaintiff's unsupported declaration, the unrebutted facts demonstrate that Plaintiff failed to meet Colonial's legitimate, reasonable and nondiscriminatory minimum qualifications for the Program Director position.

In this instance, Colonial sought not only a candidate who had experience regarding the sale and marketing of insurance and fixed annuities, but also a candidate who was licensed by the NASD and who had practical experience in the equities market. L. Green Aff. (Doc. no. 17) at Ex. A, ¶19. That requirement is clearly reasonable and job-related in light of the function of the Program Director position, *e.g.*, overseeing sales training and product support to NASD licensed Financial Consultants. Furthermore, it is well within the authority of an employer to establish legitimate, non-discriminatory minimum qualifications for a position. *See, e.g., Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1218 (7th Cir. 1980), *cert. denied* 450

---

[5] A Series 7 license allows an individual to act as a general securities representative. A Series 24 license allows managers to supervise branch activities. A Series 63 license allows an individual to solicit sales under state law. A Series 65 license allows an individual to act as an investment advisor.

U.S. 959 (1981) (qualification depends upon the nature of the business).   The right of the

employer to establish legitimate, nondiscriminatory minimum qualifications for a position is

cogently illustrated by the court's decision in *Coleman v. St. Regis Corp.,* 1985 WL 350, *4

(N.D. Ala. 1985).

      In *Coleman*, the plaintiff, a 61-year-old male, was employed as a storeroom clerk in the

maintenance department and was laid off after the company down-sized due to a decrease in

business.   After two years passed and business improved, the company created a new position

that included the plaintiff's prior duties, as well as additional tasks involving computer

programming and accounting.   *Id.* at *1.   The defendant company did not offer the new position

to the plaintiff, but rather, hired a 26-year-old male with a college degree and the requisite

computer and accounting qualifications.   *Id.*   The plaintiff sued for violation of the ADEA,

claiming that the company should have rehired him for the position and that he was

discriminatorily replaced by a younger person.   *Id.* at *2.

      The court rejected plaintiff's argument, holding that the job performed by the new

employee was a separate and distinct position from that of storeroom clerk or any other position

established prior to the layoff.   *Id.* at *2.   Additionally, the court recognized that:

> An employer is entitled to establish legitimate, non-discriminatory
> minimum qualifications for a position.   In this instance, the
> company wanted someone with some computer and accounting
> skills.   The requirements were reasonable expectations of the
> company, and were non-discriminatory.   Although the plaintiff
> asserts that he met the requirements at least as well as Tucker did,
> this assertion is not supported by the facts presented.   The plaintiff
> had never dealt with computers and has only a limited accounting
> background which is by now dated.   The court, therefore,
> concludes that the plaintiff did not qualify for the position filled by
> Tucker.

*Id.* at *4 (citation omitted).

*Coleman* is directly on point.  As in *Coleman*, Colonial eliminated Guy's position and ultimately reassigned her duties to the new Program Director position.  Likewise, as in *Coleman*, when Colonial created the new Program Director position, it added NASD-related duties of overseeing training related to NASD regulated products and negotiating seller agreements with NASD product vendors in addition to Plaintiff's former duties regarding the sale of insurance and fixed annuities.  L Green Aff. (Doc. no. 17) at Ex. A, ¶¶ 19, 24.  Those facts stand unrebutted.  At the time that Sean Tesoro was appointed to the position of Program Director on January 18, 2005, Plaintiff Guy did not possess a single NASD license, and she had no existing relationship, let alone a record of good standing, with NASD or the SEC.  Furthermore, Guy had no brokerage experience or experience selling, or training others to sell, NASD regulated products.  Rather, her investment experience was limited to insurance and fixed annuity related functions.  Based on these facts, Wealth Management Director Linda Green concluded that Plaintiff Guy was not qualified for the Program Director position.  L. Green Aff. (Doc. no. 17) at Ex. A, ¶25.

Given these undisputed facts, accepting Plaintiff's claim that she was qualified for the Program Director position regardless of her inability to meet the minimum qualifications of the position would require the Court to second guess Colonial's legitimate assessment of Guy's qualifications and its reasonable conclusion that she was unqualified for the position.  As consistently held by the Eleventh Circuit, however, the Court should not "second-guess a company's legitimate assessment of whether an employee is qualified for a particular position." *Steger v. General Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003).

Plaintiff also suggests that NASD licensing is not required for the Program Director position because Colonial never required her to hold an NASD license to perform her duties as

Family Insurance Manager and, further, that Colonial should have allowed her an allegedly customary 6-month period to obtain the requisite qualifications. Guy Resp. Br. (Doc. no. 22) at 3. The Court should reject Plaintiff's contentions for several reasons. First, Colonial willingly concedes that NASD licensing was not a requirement for Plaintiff Guy's previous position for the most obvious reason that her duties as Family Insurance Manager did not require NASD licensing or an extensive knowledge of NASD products. Indeed, that fact bolsters Colonial's argument that the Family Insurance Manager and Program Director positions were distinctly different positions. The fact that Plaintiff was qualified for her Family Insurance Manager position without holding any NASD licenses, however, does not establish her qualifications for the Program Director position. As stated by the Eleventh Circuit, "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for a plaintiff to prevail against h[er] employer [s]he must show that [s]he was qualified for another available job with that employer; *qualification for h[er] current position is not enough*." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990) (emphasis added).

Additionally, although it is true that Colonial has allowed some current employees sufficient opportunity to meet any new qualifications resulting from a modification of an existing job description, that scenario is not at issue in the instant case. In the instant case, rather than upgrading or modifying an existing position, the undisputed facts establish that Colonial created an entirely new position which subsumed many of Plaintiff's former Family Insurance Manager duties, but which also included a majority of NASD-related duties never performed by Plaintiff as Family Insurance Manager. Moreover, Plaintiff has presented no evidence that the Wealth Management division has a policy allowing a presently unqualified job applicant seeking a new and different position sufficient time to qualify for the position.

If, as urged by Plaintiff, the Court could compel Colonial to hire an unqualified applicant and allow the applicant additional time to satisfy the minimum qualifications of the position, then virtually every plaintiff would be able to meet the qualifications requirement of a *prima facie* case by simply expressing their intention to become qualified at some future date. More importantly, employers such as Colonial would be placed in the untenable position of being forced to fill a vacancy with an unqualified candidate who could not perform essential duties of the position when hired.[6]  In the instant case, allowing Plaintiff six months to obtain the necessary NASD licenses would leave Colonial without a Program Director to perform any of the NASD-related duties. Clearly, that would be an absurd result.[7]

Moreover, even assuming the truth of Plaintiff's claim that everyone knew she was studying for her Series 7 exam or aspired to obtain her Series 7 license, that fact is insufficient to establish her qualification for the Program Director position. On that issue, the Eleventh Circuit case law is unambiguous. As held in *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1276-77 n.6 (11th Cir. 2002), the mere fact that a plaintiff expresses an interest in obtaining a license necessary for a position does not establish that the plaintiff is qualified for the position for purposes of a discrimination claim. Furthermore, as established by the unrebutted affidavit testimony of Linda Green, Plaintiff Guy had ample opportunity to obtain her Series 7 license and simply elected not to do so:

---

[6]  Of course, a private company can always voluntarily choose to hire an employee who may obtain the requisite license at some established future date, *e.g.*, a law firm hiring a law school graduate awaiting her bar exam results. Even so, that lawyer would be restricted from certain functions until she obtained her license.

[7]  Plaintiff made no such allegations of disparate impact by the NASD licensing and experience requirements and has not offered any evidence of disparate impact that would call into question the minimum requirements of the Program Director position established by Colonial. *See Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 619 (11th Cir.1983) ("[t]he aggrieved party must prove a disparate impact due to the selection procedure."); *Ferguson v. Veterans Administration*, 723 F.2d 871, 873 (11th Cir. 1984) (plaintiff seeking librarian position who did not have requisite educational requirements failed to prove that the selection process impacted adversely upon women or that the affirmative action program was executed in a discriminatory manner).

> 25.    . ... Ms. Guy had an opportunity to obtain NASD licensing
> and, in fact, established that aspiration as a personal goal during
> her 2003 Employee Self Evaluation.    The division not only
> encouraged that goal, but Helena Duncan, Executive Vice-
> President of Colonial Bank, directed her to obtain her Series 7
> license.  Nevertheless, Ms. Guy did not follow these directives and
> never sat for a single NASD licensing exam.  . . .

L. Green Aff. (Doc. no. 17) at Ex. A, ¶25.  Even if Plaintiff Guy had been provided additional time to pass the Series 7 exam, a single license would not satisfy the other essential qualifications of the position, including completion of the Series 24, 63 and 65 exams (or the equivalents thereof) and a record of good standing with NASD and the SEC.  Moreover, Plaintiff would still lack the practical experience in the equities market necessary to successfully perform the functions of the Program Director position.

Plaintiff further alleges that there is evidence of Colonial's discriminatory intent because Wealth Management Director, Linda Green, the decision maker with regards to Plaintiff's promotion claim, was promoted to her position as Director of Wealth Management Director despite the fact that she did not hold the NASD licenses required by the job description.  *See* Guy Resp. Brief (Doc. no. 22) at 3.  In other words, with regards to the NASD licensing requirement, Plaintiff argues that she was treated differently than a similarly situated employee.  The Court should reject this argument, however, because Linda Green is not a similarly situated comparator.

First, Green is not a similarly situated comparator because she is a member of the same protected class, *i.e.*, she is a female employee over the age of 40.  In fact, it is well-settled law that in instances of alleged disparate treatment, the plaintiff must show that she was:  (1) a member of a protected class; (2) qualified for the position or entitled to the benefit sought; (3) subjected to adverse employment action; and (4) that the employer treated ***similarly situated***

*employees outside the class* more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997); *see also Dobson v. Central Carolina Bank & Trust Co.*, 240 F. Supp. 2d 514, 521 n.1 (M.D.N.C. 2003) (discussing §1981 employment claims, stating that it "makes sense, therefore, to insist upon evidence of comparators--similarly situated applicants or employees not in the same protected class--in assessing the strength of the inference of a discriminatory motive which *is essential to proof of the claim*") (citation omitted) (emphasis added); *Moreland v. Miami-Dade Co.*, 255 F. Supp. 2d 1304, 1312 n.4 (S.D. Fla. 2002) (since an African American employee was member of same protected class, she was not a valid comparator for purposes of the fourth prong of a disparate treatment case).

Second, Linda Green is not a valid comparator because she was promoted to a completely different, high-level managerial position in the company and was specifically selected for the position by the President and CEO of Colonial Bank, Bobby Lowder.  Affidavit of Robert E. Lowder ("R. Lowder Aff."), Ex. L at ¶4.  In filling an upper-level management post, some degree of flexibility is allowed, as the decision maker must balance employees' different strengths and qualifications, predicting all the while who will be the best ambassador for the company and most effectively serve its business needs. *See, e.g.*, *Langerman v. Thompson*, 155 F.Supp.2d 490, 500 (D. Md. 2001).  In this case, Mr. Lowder concluded that, based on his personal knowledge and experience regarding Ms. Green's performance as President/CEO-Huntsville Region of Colonial Bank, N.A. and, in particular, her management skills and success in implementing sales programs with appropriate accountabilities, she could perform the duties of the Wealth Management Director position and that possession of the NASD licenses was not immediately necessary for her to successfully perform the job.  R. Lowder Aff., Ex. L at ¶4; L.

Green Supp. Aff., Ex. M at ¶6.  In contrast, the daily functions of the Wholesaler in training and providing product support to Financial Consultants regarding the sale and marketing of NASD regulated products, required the Wholesaler to possess both the requisite NASD licenses and experience to perform the duties of the job on day one.

Third, although never mentioned by Plaintiff in her Response Brief, immediately preceding her appointment to the Director position, Ms. Green was diagnosed with breast cancer and underwent a bilateral mastectomy in June 2005 as well as six months of chemotherapy treatment following her surgery.  R. Lowder Aff., Ex. L. at 7; L. Green Supp. Aff., Ex. M at ¶7. Even while she was undergoing chemotherapy treatment, she began to prepare for the Series 7 examination in December 2004 and ultimately completed Series 7, 24 and 63 examinations in March, July and December of 2005, respectively.  R. Lowder Aff., Ex. L. at 7; L. Green Supp. Aff., Ex. M at ¶7.

In sum, Linda Green is neither a proper comparator, nor is Colonial's treatment of her evidence of discriminatory intent against Plaintiff Graham.

Finally, the Court should reject as pure speculation Plaintiff's suggestion that Colonial could not have considered the NASD licensing requirement as a significant factor given that Sean Tesoro had only held his Series 7 license for less than a year and that Colonial terminated two women within the protected class (Ann Fuller and Terri Meeves) who held NASD licenses. First, Plaintiff's statement regarding Tesoro's Series 7 license is patently misleading.  While it is true that Tesoro obtained his Series 7 license in May 2004, the undisputed evidence establishes that he obtained both his NASD Series 6 (Investment Company and Variable Contracts Products Representative Exam) and NASAA Series 63 (Uniform Securities Exam) licenses in 1994, and that he had 10 years of brokerage experience marketing and selling investment products to

broker dealers and financial institutions and their registered representatives.  S. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶¶ 4, 12.  These facts are undisputed.

Second, the fact that Colonial selected Sean Tesoro rather than Ann Fuller or Terri Meeves for the Program Director position does not establish that Colonial did not consider the NASD requirement to be an important and significant factor in the selection.  In fact, Guy's speculation is specifically rebutted by the undisputed affidavit testimony of Linda Green because she clearly states that Guy's lack of NASD licensing and experience was a significant factor in her decision not to select Guy for the Program Director position:

> 25.    In evaluating Susan Guy's future within Wealth Management, I was faced with the undeniable fact that she could not serve as the Program Director because she lacked NASD licensing and had no experience whatsoever regarding the sale and marketing of NASD regulated products. . . .

L. Green Aff. (Doc. no. 17) at Ex. A, ¶25.  Again, Green's testimony, unlike Plaintiff's unsupported speculation and conjecture, stands unrebutted.[8]

In sum, because Guy cannot show she was qualified for the position of Program Director, she cannot establish a *prima facie* case of employment discrimination.  For this reason alone, Colonial is entitled to summary judgment as a matter of law on all of Plaintiff's claims.

### PART II – PLAINTIFF HAS FAILED TO ESTABLISH PRETEXT.

Once the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  To survive summary judgment, the employee must

---

[8]  Plaintiff offers no evidence that Terri Meeves or Ann Fuller were equally or more qualified than Tesoro for the Program Director position or that they were even interested in the position.   Furthermore, even if Plaintiff could offer such evidence, it would not establish that Colonial's decision to select Tesoro rather than her was motivated by her sex or her age.  As established in Colonial's original brief, Tesoro had many attractive qualities that lead to his selection, including a B.A. from Yale University, Series 6, 7 and 63 licenses, several state insurance licenses; and 10 years of experience marketing and selling investment products to clients, including serving Colonial as a customer while employed by MassMutual as a regional sales manager.  *See* Colonial Sum. Judg. Br. (Doc. no. 18) at 32-33; Tesoro Aff. (Doc. no. 17) at Ex. K at ¶¶4, 5, 12.

come forward with evidence sufficient to permit a reasonable factfinder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination. *Id*; *see also, Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). This evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F. 3d 695, 725 (11th Cir. 2004). In the instant case, assuming, *arguendo*, that Plaintiff has established a *prima facie* of discrimination, her claims still fail as a matter of law because she has failed to establish that Colonial's proffered reasons for appointing Sean Tesoro rather than Guy to the Program Director position were a pretext for discrimination.

As set forth in its preliminary brief, Colonial has proffered three legitimate, nondiscriminatory reasons for appointing Sean Tesoro rather than Guy to the Program Director position: (1) Sean Tesoro was more qualified for the position; (2) Wealth Management was unprofitable due, in part, to the poor performance of the Family Insurance section managed by Guy, and (3) Guy was not qualified for the job because she lacked the NASD licenses and experience necessary to develop and coordinate sales training and product support for Colonial's NASD licensed Financial Consultants.

To overcome Colonial's summary judgment motion, Plaintiff Guy must rebut not just one, but each of Colonial's proffered legitimate, nondiscriminatory reasons. *See Chapman*, 229 F.3d at 1024-25 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether ***each*** of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.") (emphasis added); *see also Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002) ("Where an

employer offers multiple independently sufficient justifications for an adverse employment action, the plaintiff employee must cast doubt on each of them."). Moreover, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence," *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted), *cert. denied*, 118 S. Ct. 685 (1998); *see also Burdine*, 450 U.S. 248, 256 (1981); *Watkins v. Sverdrup Technology Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998). Furthermore, because her position was eliminated through a reorganization and reduction-in-force, Plaintiff carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons. *See, e.g., Wilson v. Firestone Tire & Rubber*, 932 F.2d 510, 517 (6th Cir. 1991); *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986). Finally, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996) (internal citations omitted).

In the instant case, Plaintiff Guy has failed to rebut ***any*** of Colonial's three proffered legitimate, nondiscriminatory reasons for appointing Sean Tesoro rather than her to the newly-created Program Director position, and she has failed to establish that Colonial's reasons are unworthy of credence so as to give rise to any disputed material fact that would preclude summary judgment.

**A.    PLAINTIFF GUY HAS FAILED TO REBUT COLONIAL'S EVIDENCE THAT SEAN TESORO WAS MORE QUALIFIED THAN HER FOR THE PROGRAM DIRECTOR POSITION.**

Colonial's first legitimate, nondiscriminatory reason for appointing Sean Tesoro rather than Plaintiff to the Program Director position is closely related to the qualifications issue. In particular, assuming *arguendo* that Plaintiff has established her *prima facie* case by showing that she was minimally qualified for the position, Sean Tesoro's superior qualifications and skills form the basis of a "legitimate, nondiscriminatory reason" for appointing him rather than Plaintiff to the Program Director position. Plaintiff, however, contends that she was the far superior candidate because she had held her state insurance license longer than Tesoro and had 19 years of experience as a Colonial employee. Based on these facts, Plaintiff contends that Colonial's conclusion that Tesoro was the more qualified candidate is merely pretext for discriminating against her on the basis of age and/or gender. Pl's. Reply Br. (Doc no. 22) at 6.

Again, Plaintiff's personal belief she was at least or more qualified than Tesoro is insufficient to withstand summary judgment. *See, e.g., Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (plaintiff cannot prove pretext by asserting baldly that she was better qualified than the person who received the position at issue); *Holifeld v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating that "conclusory assertions . . . in the absence of supporting evidence are insufficient to withstand summary judgment."). Furthermore, Plaintiff cannot prove pretext by merely alleging that she was better qualified than the individual who received the position that she wanted; rather she must establish that the defendant's employment decisions were in fact motivated by age (or gender). *See Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001) (The court must "not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive."). Moreover, to establish pretext, Guy must

demonstrate that " 'disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.' " *Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197 (Feb. 21.2006) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir.2004)).[9] Clearly, Plaintiff has failed to meet this weighty burden.

Even assuming for purposes of summary judgment the accuracy of Plaintiff's description of her qualifications, the list of job duties set forth in her supplemental affidavit compellingly illustrates why Sean Tesoro was more qualified for the Program Director position and that Plaintiff lacked objective qualifications necessary to perform the duties of the Program Director position. Specifically, virtually every qualification and function Plaintiff lists in paragraph nine of her supplemental affidavit concern insurance and fixed annuity related functions, *i.e.*, non-NASD regulated investments. S. Guy Aff. (Doc. no. 22) at Ex. A, ¶9. Colonial does not dispute Plaintiff's claim that she had extensive experience regarding the sale and marketing of insurance and fixed annuities. That fact, however, is irrelevant to the issue of whether Plaintiff met the NASD licensing and experience requirements necessary to perform the NASD-related duties representing 60% of the Program Director's duties. *See* Tesoro Aff. (Doc. no. 17) at Ex. K, ¶14.

Moreover, as previously established, Plaintiff Guy had no experience marketing or selling NASD licensed products; she held no NASD licenses; and she had no record of good

---

[9] Although previously cited the former "jump of the page" standard , the U.S. Supreme Court specifically rejected the Eleventh Circuit's previous "jump off the page" standard. *See Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197 (Feb. 21.2006). The Court declined to specify the precise standard for determining what level of disparity in qualifications is necessary to establish pretext. However, the Court has cited with approval other language in *Cooper, i.e.*, that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question". *Ash*, 126 S. Ct. at 1197. Additionally, the Court has also cited with approval the Ninth Circuit's "clearly superior" standard and the D.C. Circuit's "significantly better qualified" standard. *Id.* (citing *Raad v. Fairbanks North Star Borough School Dist.*, 323 F. 3d 1185, 1194 (9th Cir. 2003) and *Aka v. Washington Hospital Center*, 156 F. 3d 1284, 1294 (D.C. Cir. 1998) (en banc)). Since then, the Eleventh Circuit and this District have adhered to the "no reasonable person" standard. *See, e.g., Hubbard v. M&H Valve Co.*, 180 Fed. Appx. 899 (11th Cir. May 22, 2006); *Drakeford v. Alabama Cooperative Extension Sys.*, 425 F.Supp.2d 1274 (M.D. Ala. 2006).

standing with NASD or the SEC.  Furthermore, although Plaintiff may have provided training to some Colonial Financial Consultants regarding insurance and fixed annuity products, the undisputed evidence establishes that she never provided such training with respect to NASD-licensed and regulated products.  Likewise, although Plaintiff may have negotiated selling agreements with insurance and fixed annuity product vendors, she had no experience negotiating selling agreements regarding NASD regulated products.  Again, as stated in the undisputed affidavit testimony of Wealth Management Director Linda Green, "[i]n evaluating Susan Guy's future within Wealth Management, I was faced with the undeniable fact that she could not serve as the Program Director because she lacked NASD licensing and had no experience whatsoever regarding the sale and marketing of NASD regulated products."  L. Green Aff. (Doc. no. 17) at Ex. A, ¶25.

In contrast, Sean Tesoro had experience on both sides of the equation – insurance/fixed annuities and equities.  His bona fides regarding his qualifications to market, sell and train others regarding NASD-licensed products are undisputed.  At the time he was promoted to the Program Director position, Tesoro had over 10 years of experience marketing and selling investment products to clients, including insurance, fixed-rate annuities and NASD regulated products; in other words, all of the investment products offered by Colonial and not just insurance and fixed annuities.  S. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶12.  Furthermore, Plaintiff's allegation that Tesoro had only been licensed to sell insurance since 2002 is misleading because its ignores Tesoro's undisputed affidavit testimony that he also marketed and sold insurance and fixed-annuity products for multiple investment companies before moving to Alabama in 2002 and previously had been licensed to sell insurance by the states of California and Arizona.  S. Tesoro Aff. (Doc. no. 17) at Ex. K, at ¶¶4, 12.

It is also undisputed that even before Tesoro was hired, Colonial was one of his clients while he was employed as a Regional Sales Manager at MassMutual and that in that capacity, he provided training to Colonial Financial Consultants concerning the marketing and sale of insurance, fixed annuities and NASD licensed and regulated products, *i.e.*, the same training he now oversees in his capacity as Program Director. S. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶5; L. Green Aff. (Doc. no. 17) at Ex. A, ¶28. That sales training process continued after he was hired by Colonial as a Financial Consultant in 2004 and was expanded when Tesoro began to provide training to Licensed Bankers in his sales territory regarding the sale of insurance and fixed-rate annuities. L. Green Aff. (Doc. no. 17) at Ex. A, ¶26. Moreover, at the time of his promotion, Tesoro, unlike Guy, held three different NASD licenses, two of which he had held for almost 11 years – Series 6 (Investment Company and Variable Contracts Representative (issued in 1994)); Series 7 (General Securities Registered Representative (issued in 2004)); and NASAA Series 63 (Uniform Securities Exam (issued in 1994)). S. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶12. Thus, Tesoro had a record of significant experience across the board regarding all types of investment products provided by Colonial to its customers and he had provided training to Colonial Financial Consultants and Licensed Bankers regarding those products. As stated by the decision maker, Wealth Management Director Linda Green:

> I found that Mr. Tesoro was well-qualified for the position and that he specifically was qualified to perform many job duties which Susan Guy never performed as Family Insurance Manager and, in fact, could not perform without the requisite NASD licensing. Based on these facts, I chose to promote Mr. Tesoro to the new Program Director position.

L. Green Aff. (Doc. no. 17) at Ex. A, ¶29. In contrast, Green found that Plaintiff Guy was not qualified for the position because of her lack of NASD licensing and her lack of sales and marketing experience regarding NASD regulated products:

> 25.    In evaluating Susan Guy's future within Wealth
> Management, I was faced with the undeniable fact that she could
> not serve as the Program Director because she lacked NASD
> licensing and had no experience whatsoever regarding the sale and
> marketing of NASD regulated products. . . .    Without proper
> licensing, Guy lacked an essential and necessary qualification for
> the Program Director position.  Consequently, I concluded that she
> was not qualified to coordinate and implement training related to
> the marketing and sale of NASD related products.

*Id.* at ¶25.  Green, obviously realized the futility of promoting Plaintiff Guy to the Program

Director position when she had less than half the desired qualifications which Colonial

reasonably concluded were necessary to perform the job – a situation akin to hiring a paralegal to

perform the functions of an attorney.  A paralegal might be able to perform some attorney

functions, but without a license to practice law or the extensive training and experience, her

utility and productivity would be extremely limited because she could not perform essential

functions of the job.  That is precisely the case here.  In sum, Plaintiff has failed to establish any

alleged disparities in the relative qualifications of Sean Tesoro, and certainly none of such

weight and significance that no reasonable person, in the exercise of impartial judgment, could

have chosen the candidate selected over the plaintiff for the job in question.

Finally, as noted above, an employer is entitled to establish legitimate, non-

discriminatory minimum qualifications for a position, *see, e.g., Kephart*, 630 F.2d at 1218 and

*Coleman*, 1985 WL 350 at *4, and the Court may "not second-guess a company's legitimate

assessment of whether an employee is qualified for a particular position."  *Steger v. General

Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003).  In sum, Plaintiff has failed to show such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Colonial's

conclusion that Tesoro was better qualified than Guy for the Program Director position such that

a reasonable factfinder could find it unworthy of credence.  *Combs*, 106 F.3d at 1538.

For this additional reason, Colonial is entitled to summary judgment on all of Plaintiff's claims.

**B.    PLAINTIFF GUY HAS FAILED TO REBUT COLONIAL'S EVIDENCE THAT THE WEALTH MANAGEMENT DIVISION WAS UNPROFITABLE DUE, IN PART, TO THE POOR PERFORMANCE OF THE FAMILY INSURANCE SECTION SHE MANAGED.**

Plaintiff also has failed to rebut Colonial's second legitimate, nondiscriminatory reason for its decision to appoint Tesoro rather than her to the Program Director position, *i.e.*, that the Wealth Management division was unprofitable due, in part, to the poor performance of the Family Insurance section she managed.  As set forth in great detail in the original affidavit of Wealth Management Director Linda Green, as well as in Colonial's original summary judgment brief, Colonial engaged the Huntington Investment Company in mid-2004 to serve as an outside consultant for a three-year period to review the structure of the division and to provide advice and recommendations for improving overall performance and profitability.  L. Green Aff. (Doc. no. 17) at Ex. A, ¶9.  As established by Green's affidavit, Huntington analyzed Colonial's investment and insurance program by comparing certain categories of its performance to industry performance benchmarks,[10] including deposit sales penetration, deposit revenue penetration, annual sales production and annual revenue production for NASD licensed Financial Consultants as well as Licensed Bankers (insurance license only).  The results of that analysis established that the Wealth Management Section was significantly underperforming both the industry average and the top quartile in every category.   The study also established other indicia of poor performance.  For example,

---

[10]    Contrary to Plaintiff's allegation, *see* Pl's. Resp. Br. (Doc. no. 22) at 10-11, Colonial did not base its determination of profitability for the Wealth Management division merely on a comparison to Huntington's performance, but rather also relied upon a comparison of Colonial's performance with the industry average and the top quartile of the industry.  Green Aff. (Doc. no. 17) at Ex. A, ¶10; Colonial Sum. Judg. Br. (Doc. no. 18) at 8-9.

- Wealth Management was not meeting its internal goals in that none of the five sections of the Wealth Management division met their 2004 budgeted goals, and four of five sections, including the Fixed Annuity Platform Program, suffered a decrease in revenues in 2004, L. Green Aff. (Doc. no. 17) at Ex. A, ¶¶10-13;

- fixed annuity sales in Alabama and Florida fell well-below the 2004 budgeted goal and, for Alabama, substantially decreased when compared to 2003 sales, *id.* ; and

- the individual performance of Licensed Bankers was very poor in that in 2003 and 2004, respectively, only 48 of 325 and 45 of 354 Licensed Bankers met their sales goals, and 116 of the 325 and 103 of 354 Licensed Bankers sold no Family Insurance products. *Id.*

L. Green Aff. (Doc. no. 17) at Ex. A, ¶¶ 10-13.  In sum, the financial picture for Wealth Management and, particularly the Family Insurance section, was bleak.  Based on the undisputed analysis by Huntington, Colonial reasonably concluded that Plaintiff, as well as other employees of the Family Insurance section, simply were not getting the job done.[11]  Consequently, Colonial made a good faith, reasonable business judgment that, in addition to her lack of qualifications, Plaintiff would not be the best candidate for the Program Director position given the lackluster performance of the Family Insurance section in 2003 and 2004.[12]

In her Response Brief, Plaintiff clearly urges the Court to second-guess and substitute her judgment for the judgment of Colonial regarding the performance and profitability of the Family Insurance section.  In fact, rather than challenging the accuracy of the financial data prepared by Huntington and relied upon by Colonial, Plaintiff purports to establish the profitability of the

---

[11]  Although Colonial does not fault Plaintiff Guy for changing market conditions, it remains undisputed that, as the Family Insurance Manager, she was partly responsible for the overall lackluster performance of her section and for the woeful performance of the Licensed Bankers.  In fact, Plaintiff does not dispute that her job description clearly assigns responsibility to her for training and motivating all branch personnel, including Licensed Bankers, in making referrals; managing all platform licensed agents in the sale and promotion of annuity life insurance and long-term care products; increasing non-interest income to the bank; and for retaining customers through the provision of insurance products and services.  Green Aff., Ex. A at ¶5; Family Insurance Manager Job Description, Ex. G.

[12]  As noted by the Fifth Circuit, "the ADEA does not require that an employer prove that it is in fact losing money before it can take a nondiscriminatory and legitimate course of action to make more." *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 709 (1996).

Family Insurance section she managed by citing generalized performance data such as Colonial's rank in a single quarter among the top 50 bank holding companies and its rank among the top 25 banks in the South. *See* Pl's. Resp. Br. (Doc. no. 22) at 10.

Whether the undisputed evidence offered by Colonial regarding the Family Insurance section's lagging profitability or the generalized rankings offered by Plaintiff are the appropriate measure of the Family Insurance section's performance is not an issue for the Court or the factfinder to decide. *See, e.g.*, *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 647 (3rd Cir. 1998) ("whether sales quotas or evaluation scores are a more appropriate measure of a manager's performance is not for the court (or factfinder) to decide"). Even assuming, *arguendo*, that Plaintiff's data is the more accurate measure of the profitability of the Family Insurance section, such a determination is insufficient, as a matter of law, to establish pretext. As consistently held by the Eleventh Circuit, in the absence of evidence that the employer's decision is motivated by a discriminatory intent (here, age or gender), [t]he fact that the employer's belief may be mistaken or wrong in fact does not mean that such belief cannot constitute a legitimate reason for the employer's discharge of the plaintiff." *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449 (11th Cir. 1987); *see also Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Cf. Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir. 1996) ("Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some

action'") (internal citation omitted).[13]   Here, Plaintiff has offered no evidence whatsoever that Colonial's assessment of the performance of the Family Insurance section was a lie or phony or that Colonial's decision in appointing Tesoro rather than Plaintiff as the Program Director was motivated by age or gender.

Furthermore, even assuming the relevancy of her alternative analysis, the evidence Plaintiff offers does not, in fact, establish an increase of net profits (or even gross revenues) for the Family Insurance section in 2004 or otherwise show improved performance.   For example, Plaintiff contends her alleged success in managing the Family Insurance section is evidences by the fact that Colonial was ranked among the top 50 banks in the country and the top 25 in the South for sales of annuities and mutual funds during the first quarter of 2004.   Pl's. Reply Br. (Doc. no. 22) at 11.   Colonial does not dispute these rankings to the extent that they are even relevant.   However, on their face, the rankings, which are merely a snapshot of Colonial's performance in a single quarter, are not based on revenues generated solely from the sale of insurance and fixed annuities, *i.e.*, the area of Plaintiff's responsibility as Family Insurance Manager.   Rather, those rankings are based on revenues generated from sales of mutual funds and annuities (fixed *and* variable).   Given the undisputed fact that the Family Insurance section was not responsible for the sale of variable annuities or mutual funds (both of which are NASD regulated products), Plaintiff's comparison is misleading at best, and reveals nothing about the specific performance of the Family Insurance section.   In other words, Plaintiff's attempt to correlate these rankings with the performance of the Family Insurance section is truly an apples and oranges comparison.   The rankings are also misleading because a bank, such as Colonial, can

---

[13]   *See also e.g., Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (summary judgment appropriate where employee was discharged because employer "honestly believed" she had fraudulently accepted disability benefits and she was unable to point to facts suggesting she was investigated differently because she was an older employee); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) ("An articulated motivated reason is not converted into pretext merely because, with benefit of hindsight, it turned out to be poor business judgment."). Clearly, Plaintiff has failed to meet this weighty burden.

have a relatively high rank, yet still have unprofitable sections therein or sections that are profitable for a single quarter but which are not profitable over the course of a year.  In fact, as established by Plaintiff's evidence, although Colonial is listed in the top 50 banks in the country regarding revenues generated from annuity and mutual fund sales for the first quarter of 2004, the very chart cited by Plaintiff clearly reflects that Colonial's annuity and mutual fund ***revenues actually decreased 19%*** from the previous quarter.  (Doc. no. 23) at Ex K, at 4.

Furthermore, Plaintiff's analysis does not rebut the analysis prepared by Huntington and relied upon by Colonial as a basis for its restructuring plan – data specifically focused on determining the performance and profitability of the Family Insurance section.  For example, Plaintiff does not rebut Colonial's evidence that revenues generated from fixed annuity sales for 2004 failed to meet budgeted goals and even reflected a significant decrease from 2003 revenues. Plaintiff also cannot rebut Colonial's evidence that the sales of insurance and fixed annuities by Licensed Bankers for 2003 and 2004 were woefully inadequate, with almost a third of the 300-plus Licensed Bankers selling ***no*** insurance or fixed annuities in either year.

Finally, the numbers Plaintiff cites in her "Income Before Taxes and Management Fees" chart, a chart which purports to reflect ***gross*** revenues rather than net profits, reflects a substantial ***decrease*** of $507,466.00 in gross revenues (or 9.3 percent) for the Family Insurance section in 2004.  Pl's. Br. (Doc. no. 22) at 11.  In other words, although Plaintiff may be able to establish a 3% increase in the Family Insurance section's percentage-share of the total gross revenues generated by the Wealth Management division in 2004, that increase does not tell the complete story -- that the Family Insurance section actually suffered nearly ***a 10% decrease*** (a half-million dollar loss) in 2004.  In sum, the Court should reject Plaintiff's invitation to second-guess the basis of Colonial's decision.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470

(11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.' ") (citations omitted).

For this additional reason, Colonial is entitled to summary judgment on all of Plaintiff's claims.

## C. PLAINTIFF GUY HAS FAILED TO REBUT COLONIAL'S EVIDENCE THAT SHE WAS UNQUALIFIED FOR THE PROGRAM DIRECTOR POSITION.

Plaintiff's failure to establish her qualifications for the Program Director position not only supports Colonial's argument regarding her failure to sustain a that she has failed to sustain a *prima facie* case for her claims, but also, her lack of qualifications alternatively provides a third and final basis of Colonial's legitimate, nondiscriminatory reasons for selecting Sean Tesoro rather than Plaintiff for the Program Director position.  Accordingly, Colonial incorporates herein its previous argument regarding Plaintiff's lack of objective qualifications for the Program Director position.  Furthermore, because Plaintiff has failed to show such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Colonial's proffered legitimate reason for appointing Tesoro rather than Plaintiff to the Program Director position that a reasonable factfinder could find it unworthy of credence, *see Combs*, 106 F.3d at 1538, Colonial is entitled to summary judgment on all of Plaintiff's claims even if the Court rejects Colonial's other two proffered reasons for its decision.

## PART III – PLAINTIFF HAS FAILED TO SUBMIT EVIDENCE OF DISCRIMINATORY INTENT.

Finally, Defendant Colonial is entitled to summary judgment on all of Plaintiff's claims because she has failed to produce any evidence by which a finder of fact could reasonably conclude that Colonial intended to discriminate against her on the basis of age or gender.  It is well-established that in addition to establishing pretext and, in particular, showing that Colonial's reasons for selecting Tesoro over Plaintiff for the Program Director position were false, Plaintiff

31

Guy must also establish that discrimination was the real reason. *St Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993); *see also Rowell v. Bellsouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005) (under the ADEA, where there has been a reduction-in-force, the plaintiff must present evidence by which a factfinder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1329. In the instant case, other that conclusory allegations, Plaintiff has offered no evidence of discriminatory intent by Colonial, whether based on age or gender.

Furthermore, in addition to the evidence submitted in support of its nondiscriminatory reasons, Colonial also submitted other undisputed evidence establishing that its motives for selecting Tesoro instead of Plaintiff were not motivated either by Plaintiff's age or her gender. In particular, Colonial established the following facts:

- There is no direct evidence of any discriminatory intent, *e.g.*, comments about Plaintiff's age or gender or about the age or gender of any other Colonial employee;

- The major decision maker, Wealth Management Director Linda Green, was a member of the protected class (female over 40) as were numerous other high-ranking Colonial officials, *see* T. Gibson Aff. (Doc. no. 17) at Ex. C, ¶14[14]; and

- 21 of the 29 positions eliminated through the reorganization of the Wealth Management division were held by employees under the age of 40, and 16 of those 21 employees (including five men) were under the age of 30.

All of these facts, which stand unrebutted, counter any conclusory allegation by Plaintiff that Linda Green's decision to select Sean Tesoro rather than her for the Program Director position was motivated either by Plaintiff's age or her gender.

---

[14] Plaintiff seeks to ignore the importance of the fact that the actual decision maker in this case was a member of the protected class. Although that fact alone may not be dispositive, the Eleventh Circuit unequivocally has held that it is an important factor courts should consider and that a plaintiff bears a more difficult burden to establish discriminatory intent when the primary players behind the decision are well over forty and within the protected class of persons protected by the ADEA. *See, e.g. Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).

Accordingly, because Plaintiff has failed to present evidence by which a factfinder could reasonably conclude that Colonial intended to discriminate on the basis of age or gender in reaching that decision, Colonial is entitled to summary judgment on all of Plaintiff's claims.

## III.    CONCLUSION

For the foregoing reasons, as well as those set forth in Colonial's previously submitted summary judgment brief, the Court should enter summary judgment in Colonial's favor as to all counts against it contained in the Complaint, dismiss the Complaint and all claims in this lawsuit against Colonial with prejudice, and tax costs against Plaintiff.

Respectfully submitted,

/s/Christopher W. Weller
Christopher W. Weller (WEL030)
CAPELL & HOWARD, P. C.
P.O. Box 2069
Montgomery, Alabama 36102-2069
(334) 241-8000

THE COLONIAL BANCGROUP, INC. &
COLONIAL BANK, N.A.
David B. Byrne, Jr. (ASB-0354-R69D)
General Counsel
One Commerce Street
Montgomery, Alabama 36104

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing upon counsel of record *viá* U.S. Mail:

Susan Guy, Pro Se
974 Lewis Road
Deatsville, Alabama 36002

DONE this the 6th day of October, 2006.

/s/Christopher W. Weller_____
Of Counsel

# EXHIBIT L

## AFFIDAVIT OF ROBERT E. LOWDER

STATE OF ALABAMA            )
                                            )
MONTGOMERY COUNTY      )

Before me, a notary public in and for said state and county, personally appeared Robert E. Lowder, who, after being first duly sworn, deposes and says as follows:

1.      My name is Robert E. Lowder.  I am a resident of Alabama.  I am currently the Chairman and Chief Executive Officer of Colonial BancGroup and, in such capacity, file this Affidavit in support of Colonial's motion seeking summary judgment in the lawsuits filed by former Family Insurance Manager, Susan Guy, and former Platform Annuity Agent Trainer, Kitty Graham.  Both Ms. Graham and Ms. Guy were employed by Colonial Bank in its Wealth Management division until their positions were eliminated in January 2005 pursuant to a reorganization of the division.

2.      I am authorized to make this affidavit, and I am competent to testify at trial regarding the statements made in this affidavit.

3.      In May 2004, I hired Linda Green as the new Executive Vice President of the Wealth Management division of Colonial Bank, N.A.  The job description for the Director position included minimum qualifications requiring candidates to hold certain NASD licenses. When I discussed the position with Ms. Green, she informed me that she did not hold the requisite licenses at that time, but we agreed that she could obtain those licenses after her appointment to the Director position.

4.      Weighing all of Ms. Green's relative qualifications, I agreed to waive the NASD license requirement based on the following factors:  my knowledge of the duties and functions of the Director position; my personal knowledge and experience regarding Ms. Green's past

1

performance as President/CEO-Huntsville Region of Colonial Bank, N.A. and, in particular, her management skills and success in implementing sales programs and accountability; my considered opinion that she was highly qualified to perform the functions of the Director position and the best candidate to effectively serve the interest of the Company; and my conclusion that possession of the NASD licenses was not immediately necessary for her to successfully perform the job.

     5.     Immediately after her appointment as Director, Ms. Green was diagnosed with breast cancer and underwent a bilateral double mastectomy in June 2005, followed by six months of chemotherapy treatment. Even while undergoing chemotherapy, Ms. Green prepared for her Series 7 examination. She ultimately obtained her Series 7, 24 and 63 licenses in March, July and December of 2005, respectively.

**FURTHER THE AFFIANT SAYETH NOT.**

Robert E. Lowder

SWORN TO AND SUBSCRIBED BEFORE ME on this the 5TH day of October 2006.

(SEAL)

Notary Public

My Commission Expires: _2009_

2

# EXHIBIT M

## SUPPLEMENTAL AFFIDAVIT OF LINDA GREEN

STATE OF ALABAMA    )
                              )

MADISON COUNTY     )

Before me, a notary public in and for said state and county, personally appeared Linda Green, who, after being first duly sworn, deposes and says as follows:

1.      My name is Linda Green. I am a resident of Alabama. I am currently employed as Executive Vice President of the Wealth Management division of Colonial Bank, N.A. and, in such capacity, file this Supplemental Affidavit in support of Colonial's motion seeking summary judgment in the lawsuits filed by Kitty Graham and Susan Guy, former employees of the Wealth Management division.

2.      I am authorized to make this affidavit, and I am competent to testify at trial regarding the statements made in this affidavit.

3.      In her summary judgment Response Brief, Plaintiff Susan Guy expresses confusion regarding Sean Tesoro's proper job title. Although as Director of the Wealth Management division I originally announced on January 18, 2005 that Sean Tesoro had been appointed as "Sales and Service Manager," his title was later changed to "Program Director" to better reflect the functions of the position. The qualifications of and duties assigned to the position, however, have remained the same since Mr. Tesoro's appointment to the position. This title change was made after the elimination of Ms. Guy's position as Family Insurance Manager.

4.      Furthermore, contrary to the statements made by both Susan Guy and Kitty Graham in summary judgment response briefs, the January 18, 2005 memorandum announcing the appointment of Sean Tesoro and Cary Guffey to their newly-created positions did not serve as a formal job description for either the Program Director (or Sales & Service Manager) or the

Regional Sales & Development Wholesaler positions. Rather, this interoffice memorandum was merely an announcement I provided to members of the managerial staff of Wealth Management and Bank Management announcing the new organizational structure of the division and generally describing the functions of the newly-created positions held by Messrs. Tesoro and Guffey.

5.    Although discussed in detail in my first affidavit, prior to the creation of the Program Director position held by Mr. Tesoro, most of the NASD-related duties were assigned to the Product Manager position in the Program Management section of the Wealth Management division. Those former duties, in addition to the insurance and fixed annuity related duties of the former Family Insurance Manager position, have been consolidated into the single Program Director position held by Sean Tesoro. Furthermore, the majority of Mr. Tesoro's duties as Program Director involve functions related to NASD regulated products.

6.    Finally, with respect to my promotion to the position of Director of Wealth Management in May 2004, although it is true that I did not hold any NASD licenses at the time of my appointment, I advised Chairman and Chief Executive Officer Robert Lowder of that fact during my interview. Mr. Lowder concluded, however, that I was qualified to perform the duties of the Director position based on my management skills and my success in establishing sales programs with appropriate accountabilities in my capacity as President/CEO of the Northern Region of Colonial Bank, N.A. (which included 11 counties and 33 bank branches). Moreover, Mr. Lowder concluded that it was not immediately necessary for me to hold those licenses to successfully perform the job. We further agreed that upon my appointment to the Director position, I would undertake the necessary steps to obtain the requisite securities licenses.

7.    Immediately preceding my appointment to the Director position I was diagnosed with breast cancer and underwent a bilateral mastectomy in June 2005 as well as six months of

chemotherapy treatment following my surgery. Even while I was undergoing chemotherapy treatment, I began to prepare for the Series 7 examination in December 2004. I successfully completed the Series 7 examination in March 2005, the Series 24 examination in July 2005, and the Series 63 examination in December 2005.

**FURTHER THE AFFIANT SAYETH NOT.**

_Linda Green_

Linda Green

SWORN TO AND SUBSCRIBED BEFORE ME on this the 5th day of October 2006.

(SEAL)



Notary Public

My Commission Expires: _____



DONNA E. WEINBERG
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 08/30/2013