IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN H. GUY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:06-CV-00271-WKW-DRB |
| ) | WO |
| COLONIAL BANK, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this job discrimination action initiated *pro se* by Plaintiff Susan H. Guy ("Guy") on March 24, 2006, the Magistrate Judge concludes that a disputed issue of material fact warrants denial of the *Motion for Summary Judgment of Defendant The Colonial BancGroup, Inc.,* filed August 18, 2006 **(Doc. 16)**, just as it did this defendant's motion to dismiss.

**I.   BACKGROUND**

Guy's termination on January 18, 2005, triggered her following-described complaint of unlawful discrimination:

> On 1/18/05, without any forewarning, I was unjustly terminated and told that my job had been eliminated due to reorganization. On the same day a much younger male with less experience, and less than 1 year of employment with Colonial, was promoted to a job with the same duties I had but with a different title. This was confirmed by memo of the same date (1/18/05) to all bank presidents and senior management. Notably, the only terminations in this reorganization were four females over the age of 40 and "all" were replaced with younger males. (*Compl.*, ¶ 9).

BancGroup responded with a *Motion to Dismiss* on April 18, supplemented on May 16, which

presented a single contention: *"BancGroup did not employ fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and as a result, is not covered by Title VII [of the Civil Rights Act of 1964]."* (Doc. 6 at 1). BancGroup supported its contention with the Affidavit of Tara Gibson, an Assistant Vice President at Colonial Bank ("Gibson Affidavit"). After due consideration of written submissions, the Magistrate Judge concluded:

> Resolution of BancGroup's dismissal motion depends on the court's analysis of matters extraneous to the complaint: (a) an affidavit attached to a supporting memorandum which in turn reports statistics and conclusions from an "attached" document which is not attached; and (b) annual reports filed by BancGroup with the SEC, and attached to the opposition memoranda. The question of whether BancGroup qualifies as an "employer" subject to actions under Title VII and the ADEA is jurisdictional and otherwise too important for this court to rely on unverified or ambiguous reports which clearly warrant construction by others and additional discovery. Accordingly, at this early stage in the proceedings, the court declines to convert BancGroup's Rule 12(b)(6) dismissal motion to a Rule 56 summary judgment motion.

The *Recommendation* entered August 4, 2006 (Doc. 15) set an August 18, 2006 deadline for objections; in lieu of objections to the Recommendation for denial of its Rule 12(b)(6) motion, BancGroup filed on the deadline a *Motion for Summary Judgment* (Doc. 16). Three days later BancGroup joined Colonial Back in its *Motion for Summary Judgment* (Doc. 17). Absent objections to the Recommendation, the District Judge entered its Order adopting it on August 21, 2006 (Doc. 19). After summarizing the summary judgment standard, the court discusses the Rule 56 submissions separately only to the extent reasonably necessary to demonstrate the existence of disputed factual issues warranting discovery.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56 (c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of" of the pleadings and evidentiary record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A properly supported motion for summary judgment "requires the non-moving party to go beyond the pleadings and by. . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', "designate 'specific facts showing that there is a genuine issue for trial'." *Id.*; *See* Fed.R.Civ.P. 56(e) and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining the evidentiary rebuttal required for issues on which the non-moving party would bear the burden of proof at trial).

The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). In doing so, the court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).

### III. DISCUSSION

As it did in its unsuccessful Rule 12(b)(6) motion, BancGroup presents only one contention in its Rule 56 motion – that its workforce did not rise to the requisite level for "employer" coverage under either Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. ("Title VII") or the

Age Discrimination in Employment Act of 1967, 29 U.S.C. 671, et seq. ("ADEA").[1] The court grounds its analysis on the evidentiary submission submitted by BancGroup and Graham on the summary judgment record in its entirety.[2]

### A.    Relevant Law

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the

---

[1]*Mot.* at 1 and ¶3.  BancGroup is mistaken in describing the alleged numerical shortcoming as fatal for the court's exercise of subject-matter jurisdiction ( *"Consequently, the Court lacks subject matter jurisdiction over Plaintiff's claims against BancGroup."*)  In *Arbaugh v. Y & H Corp.*, ___ U.S. ___126 S. Ct. 1235, 1238,163 L.Ed. 2d 1097, 1102 (2006), the United States Supreme Court resolved conflicting opinions in the federal appellate courts on "whether the numerical qualification contained in Title VII's definition on 'employer' affects federal-court subject-matter jurisdiction or, instead, delineates a substantive ingredient of a Title VII claim for relief.." The Court squarely rejected the "15-or-more employees requirement" as "jurisdictional" and held: "[T]he numerical threshold does not circumscribe federal-court subject-matter jurisdiction. Instead, the employee-numerosity requirement relates to the substantive adequacy of [the] Title VII claim." *Id.*.  See *Faulkner v. Woods Transportation, Inc.*, 174 Fed. Appx. 525, at *528(11th Cir. 2006)(applying *Arbaugh* to Title VII, and ADEA claims as well as claims under the Americans with Disabilities Act).

[2]The *pro se* plaintiff submitted a single *Response, memorandum, and evidentiary submission* in opposition to both summary judgment motions(Docs. 21, 22, 23). Though the Response and memorandum fail to specify BancGroup's threshold contention, the evidentiary submission contains information which is relevant and due to be considered.  the entire record on summary judgment to discern any genuine issue of disputed material fact and to assess BancGroup's claimed entitlement to judgment as a matter of law.  Both judicial deference to pro se litigants and judicial obligations under Rule 56(d) restrain any entry of summary judgment based alone on the adverse litigant's neglect to join the summary judgment issue precisely.  See *Trustees of Central Pension Fund v. Wolf Crane Service, Inc.*, 374 F. 3d 1035, 1039(11th Cir. 2004) ("Summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment."); *United States v. One Piece of Property*, *5800 S.W. 4th Ave.*, *Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("The district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion.")**.**

In addition to Guy's *Response* to the collective motions, the court has considered BancGroup's Reply Brief and supporting evidence (Docs. 27 and 28).

current or preceding year. 42 U.S.C. §2000e(b). An "employer" covered by the ADEA is a similarly described "person . . . who has twenty or more employees for each working day" in the same specified period. 29 U.S.C. §630(b). The "current year" is the year in which the alleged discriminatory act occurred, and the "payroll method" for counting employees is determinative in Title VII and ADEA cases – i.e., an entity has as its employees all individuals with which it had an employment relationship on the day in question, whether or not the employee worked or was compensated on the given day. *Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 205, 211-212 (1997).

Though not discussed specifically by the parties, the evidentiary record requires the court to consider whether the employees of BancGroup and Colonial Bank should be aggregated and counted solely for the purpose of coverage under these statutes  In an employment discrimination case involving public entity employers, the Eleventh Circuit, in *Lyes v. City of Riviera Beach, Florida*, 166 F. 3d 1332, 1341 (11th Cir. 1999), addressed *en banc* an issue concerning "the test applicable for deciding whether the employees of two employers are to be aggregated for determining if the minimum number of employees exist for Title VII coverage." Its analysis of this issue is instructive even in the context of the private employers sued here. "[The Eleventh Circuit]", Judge Carnes noted, "accord[s] a liberal construction to the term 'employer' under Title VII," id. (citations omitted), explaining:

> In keeping with this liberal construction, we sometimes look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII.
>
> We have identified three circumstances in which it is appropriate to aggregate multiple entities for the purposes of counting employees. First, where two ostensibly separate entities are "highly integrated with respect to ownership and operations,' ", we may count them together under Title VII. *McKenzie [v. Davenport-Harris Funeral*

5

> *Home*, 834 F.2d 930] at 933 9(11th Cir. 1987)] (*quoting Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 726 (N.D.Ala.), aff'd, 664 F.2d 295 (11th Cir. 1981)). This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them. *See Virgo [v. Riviera Beach Associates, Ltd.*, 30 F.3d 150] at 1359-60 [11th Cir, 1994)]. This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees. *See Williams [v. City of Montgomery*, 742 F.2d [586] at 589 [(11th Cir 1984)]. This is the "agency" test. *See generally* 2 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 1309-17 (3rd ed. 1996).

*Id.* The summary judgment submissions on this record implicate the "single employer" or "integrated enterprise" test, and the court's evaluation of the record on this issue will be guided as directed in *Lyes* as follows:

> In determining whether two non-governmental entities should be consolidated and counted as a single employer, we have applied the standard promulgated in NLRA cases by the National Labor Relations Board. *See, e.g., McKenzie*, 834 F.2d at 933. This standard sets out four criteria for determining whether nominally separate entities should be treated a an integrated enterprise. Under the so-called "NLRB test," we look for (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Id.* (citations omitted).

### B.  Evidentiary Analysis

BancGroup grounds its claim for insulation from Title VII and ADEA coverage on this conclusion from Tara C. Gibson ("Gibson"), Human Resources Area Manager, Montgomery BancGroup, Colonial Bank, N.A.: "BancGroup employed only fourteen (14) employees during the

6

2004 and 2005 calendar years."[3] Incorporated in her affidavit is "a compilation of the employment records [she] reviewed [ to] reflect[] the names of all persons employed by BancGroup for the 2004 and 2005 calendar years, as well as the number of weeks and periods of their employment." They indicate only fourteen employees for a period of twenty weeks in 2004 and sixteen for 2005 but two – Catherine M. Hewlett and Vivian L. McKean– were employed less than twenty weeks: respectively, 2.5 weeks and 10 weeks.[4]

Other evidence proffered by both parties, however, creates a genuine issue of material fact whether BancGroup's number of employees may be added to the number of Colonial Bank employees to satisfy the requisite numerosity. Preliminarily, BancGroup includes in its own brief relevant evidence which invites the court's consideration of the single employer/integrated enterprise theory:

> The only evidence Plaintiff previously offered in an attempt to establish BancGroup's alleged "employer" status are the BancGroup's 2004 and 2005 Annual Reports (Form 10-K) filed with the United States Securities and Exchange Commission for 2004 and 2005 (hereinafter, collectively the "Annual Reports"), which reflect only that "BancGroup *and its subsidiaries*" employed in excess of 4,000 persons during the relevant time period. (Doc. no. 8), Exs. 1, 2. However, as demonstrated by the plain, unambiguous language of the Annual Report, BancGroup and its subsidiaries, i.e., Colonial Bank, N.A., Colonial Brokerage, Inc., etc, *collectively* employed over 4,000 employees during 2004 and 2005.
> *** In fact, the Annual Reports submitted by Plaintiff specifically establish the distinction between BancGroup and Colonial Bank, N.A., stating that BancGroup was organized in 1974 as a "bank holding company under the Bank Holding Company Act of 1956"; that its "principal activity[] is to supervise and coordinate business of its subsidiaries and provide them with capital and services"; and that "[i]n 1997 [] BancGroup consolidated its various banking subsidiaries into "Colonial Bank." (Doc. no. 9), Exs. 1 & 2.

---

[3] The corrected affidavit is Doc. 24-2, filed October 4, 2006, to correct the incorrect affidavit submitted with the motion on August 18, 2006.

[4] *Gibson Aff.* ¶3.

(*Mot.* at ¶¶8,9) (emphasis in original).

These additional evidentiary facts contribute sufficiently to create a disputed issue of fact concerning whether BancGroup and Colonial Bank should be treated as a "single employer" to satisfy the numerosity requirements of Title VII and ADEA liability:

(1) the HR Manual refers to the BancGroup and Colonial Bank relationship of bank holding company and subsidiary;

(2) the HR Manual provides that employment agreements for a specified period of time must have advance approval from the Chairman & CEO of BancGroup or the Regional President/CEO of Colonial;

(3) BancGroup is identified as "company" in both the Regional Sales & Development Wholesaler and Platform Annuity Agent Trainer job announcements;

(4) the January 18, 2005 Separation Agreement provides, in pertinent part:

> This letter (the "Agreement") upon your signature, will constitute the Agreement between you and *The Colonial BancGroup,Inc.*, and its owners, stockholders, current and former agents, directors, officers, employees, parent companies, representatives, insurance carriers, attorneys, divisions, *subsidiaries (including Colonial Bank, N.A.)*, affiliates and related companies and their predecessors, successors, heirs, executors, administrators, and assigns *(collectively referred to as "Employer")* concerning your separation of employment from *Employer*.[5]

and

(5) Robert E. Lowder, Chairman & CEO of BancGroup was directly involved in hiring Linda Green, the Executive Vice President of the Wealth Management division of Colonial Bank who made the decision to eliminate several positions, including Guy's

---

[5]*Pl.'s Ex.* C ; *Def.'s Ex.* J (emphasis added) The Separation Agreement includes a "Complete Release, Waiver of Claims and Covenant Not to Sue" (¶6 at 2) which covers both defendants since they expressly fall within the definition of "employer."

position.[6]

BancGroup is not entitled, therefore, to judgment as a matter of law "because it did not employ the requisite number of employees during the relevant time period." (*Mot.* at 1).

### III. CONCLUSION

Because this summary judgment establishes a disputed issue of material fact and the movant Defendant has not demonstrated its entitlement to judgment as a matter of law, *it is the Recommendation of the Magistrate Judge that the Motion for Summary Judgment of Defendant The Colonial BancGroup, Inc. (Doc. 16) be DENIED.*

**It is further ORDERED** *that the parties file any objections to this Recommendation not later than December 28, 2006.* Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d

---

[6]See Defs.' Exs. B, E, G, J, and M;

1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 15th day of December, 2006.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE