IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SUSAN H. GUY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:06-CV-00271-WKW-DRB |
| | ) | WO |
| COLONIAL BANK, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this job discrimination action initiated *pro se* on March 24, 2006, Plaintiff Susan H. Guy ("Guy") contends that Defendants, The Colonial BancGroup, Inc. and Colonial Bank, N.A. (collectively, "Colonial"), terminated her based on her age and gender. After considering all supporting and opposing submissions, the court concludes that these Defendants' **Motion for Summary Judgment,** jointly filed on August 21, 2006 (**Doc. 17**), is due to be GRANTED.[1]

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56 (c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of" of the pleadings and

---

[1] Filed herewith is a *Recommendation* for denial of Defendant BancGroup's *Motion for Summary Judgment* (Doc. 16) which is grounded solely on a contention that its workforce did no rise to the requisite level for "employer" coverage under either of the anti-discrimination statutes on which Guy relies. Like the movants (*see Mot*. at 1), the court refers to the two defendants herein collectively as "Colonial."

evidentiary record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A properly supported motion for summary judgment "requires the non-moving party to go beyond the pleadings and by. . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', "designate 'specific facts showing that there is a genuine issue for trial'." *Id.*; *See* Fed.R.Civ.P. 56(e) and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining the evidentiary rebuttal required for issues on which the non-moving party would bear the burden of proof at trial).

The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). In doing so, the court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie,* 526 U.S. 541, 550-55 (1999).

## II. FACTUAL BACKGROUND

Construed most favorably to Guy, the evidentiary record discloses the following facts of primary relevance.[2] Following a five-year stint in banking at First Alabama Bank, Guy commenced

---

[2] This essentially undisputed chronology is summarized from Guy's Affidavit, *Pl.'s Ex. A* ("*Guy's Aff.*"); the Affidavit of Linda Green, *Defs.' Ex. A* ("*Green Aff.*"), who is Executive Vice President of the Wealth Management division of Colonial Bank; and the Affidavit of Tara Gibson, *Defs.' Ex. C*, as corrected in Doc. 24-2, filed Oct. 4, 2006 (*"Gibson Aff"*). Gibson served as Human Resources ("HR") Area Manager for Colonial's Montgomery BancGroup. Disputed facts and additional facts of relevance are reserved for
(continued...)

her nineteen-year career at Colonial and worked in a supervisory capacity for sixteen years before becoming a Vice-President of Colonial Investment Services, Inc., the bank's licensed insurance agency subsidiary. At the time of the events in controversy, Guy held the position of Manager of the Family Insurance section of Colonial's Wealth Management division. Colonial promoted Linda Green ("Green"), at age 53, to be Executive Vice-President of the Wealth Management Division.

As a Family Insurance manager (a position also described as Platform Manager and Insurance Director, and commonly known as Platform and Insurance Manager), Guy had responsibility for management, development and implementation of all insurance programs within the Wealth Management Division, and she also had training responsibilities for platform licensed agents and lending personnel. She was "ultimately responsible for increasing non-interest income to the bank and for retaining customers through the provision of insurance products and services . . .[and] for motivating employees for insurance sales purposes." [3]

In January 2006, Colonial eliminated Guy's position as Family Insurance Manager along with several other positions within the Wealth Management Division, pursuant to an outside consultant's recommendations at the conclusion of a "lengthy and comprehensive process [commenced in mid-2004] of restructuring the division for the purpose of increasing revenue and profitability."[4]

---

[2](...continued)
discussion of the legal claims.

[3]*Green Aff.* at ¶ 5

[4]According to Green: prior to 2005, Colonial offered "a wide array of investment products and services" through two separate sections of the Wealth Management Division: (1) the Family Insurance Section, which "provided sales training and product support to the Licensed Bankers via the two Trainers", who were managed by Guy until the elimination of her position; and (2) the Product Management Section, which "was responsible for product and sales training for approximately 30 NASD licensed Financial Consultants, i.e., brokers, who,
(continued...)

Green, along with HR Area Manager Tara Gibson, met with Guy, then age 44, to advise her that the restructuring-based elimination of her Family Insurance Manager position necessitated her termination. Guy rejected Colonial's offer of "a severance package, including 160 hours severance pay, as well as the opportunity to reapply for other positions within Colonial", and she did not reapply for another position with Colonial.[5]  Guy recalls Green's advice at that time "that there had been a new position created entitled Sales and Service Manager for which she had considered me, however, she stated she had elected to give this position to someone else. There was no explanation as to why she had elected to give this position to someone else."[6]

On or about January 24, 2005, Green promoted Sean Tesoro ("Tesoro") "internally from the position of Financial Consultant" to the new position of Program Director; Tesoro "had over 10 years of experience marketing and selling investment products to clients, including insurance, fixed-rate

---

[4](...continued)
in turn, marketed and sold NASD licensed products to Colonial customers." The restructuring ultimately implemented reflected recommendations from an outside consultant's comprehensive review (*see Green Aff.* at ¶¶ 7-19)

[5]Green Aff. at ¶ 21.

[6]*Guy Aff.* at ¶6.   Green's recollection differs slightly:

> At no time during the meeting did Ms. Guy ever inquire about the availability of another position within the Wealth Management division or within Colonial Bank. Furthermore, when Tara Gibson reviewed the terms of the proposed separation agreement with Ms. Guy, she informed her that she had the right to reapply for another open position with the company. I also informed Ms. Guy that if she successfully reapplied for another position, her termination pursuant to the elimination of her Family Insurance Manager position would not be treated by Colonial as a break in service.

*Green Aff.* at 21..

annuities and NASD licensed products."[7] According to Green, Tesoro "specifically was qualified to perform many job duties which Susan Guy never performed as Family Insurance Manager and, in fact, could not perform without the requisite NASD licensing."[8] Viewed from Guy's perspective, however, Green promoted Tesoro, "a much younger and less experienced male, . . . to a new job titled Sales and Service Manager [which] described duties that mirrored those of [her eliminated] position." [9]

### III.  DISCUSSION

Guy's complaint alleges her claim as follows:

> On 1/18/05, without any forewarning, I was unjustly terminated and told that my job had been eliminated due to reorganization. On the same day a much younger male with less experience, and less than 1 year of employment with Colonial, was promoted to a job with the same duties I had but with a different title. This was confirmed by memo of the same date (1/18/05) to all bank presidents and senior management. Notably, the only terminations in this reorganization were four females over the age of 40 and "all" were replaced with younger males.

(*Compl.*, ¶ 9).

---

[7]*See Green Aff.* at ¶ 26 *and Pl.'s Ex. E*, Green's Memorandum dated January 18, 2005, announcing to Colonial's Regional CEOs, in pertinent part:

> I am pleased to announce a new organizational structure within the Colonial Brokerage Division.
>
> We have established a new job called Sales and Services Manager, and have promoted Sean Tesoro to fill this job. This job includes the responsibility for coordinating training, sales reporting, sales meetings, marketing, managing relationships with vendors, and managing the soon to come Fixed Annuity help desk.
>
> Sean is currently a Financial Consultant in our Montgomery Region. He came to us with significant industry experience with fixed annuities, brokerage, and insurance providers.

[8]   *Green Aff*. at ¶ 28.

[9]   *Guy Aff*. at ¶ 6.

Guy bottoms her claim of disparate treatment discrimination on a contention that Colonial did not eliminate her position as Family Insurance Manager but instead " re-titled it as Sales and Service Manager,"assigning Tesoro, "a much younger, less experienced male, to perform her previously assigned duties." Guy deems it "notable"

> that Tesoro was promoted to the position of Sales and Service Manager and not the position of Program Director or Product Manager as defendants indicate in their motion for summary judgment." The defendants have been unable to establish legitimate reasons for their discriminatory actions and this difference in titles and associated position responsibilities serves as evidence that there are significant issues as to material facts and warrants a denial of the motions for summary judgment.

(Pl.'s *Mem.* at 1). Defendants seek summary judgment because Guy "cannot establish a *prima facie* case for either claim and because she cannot show that Colonial's legitimate and nondiscriminatory reasons for its actions were a pretext to discriminate against Guy based on her age or gender." (Defs.' Mem. at 2)

After outlining generally the applicable analytical framework governing age and gender discrimination claims, the court explains that the evidentiary record of affidavits, business, and EEOC records supports Defendants' contentions.

### A.  Analytical framework

#### 1. *Disparate treatment claims generally*

Title VII makes it an "unlawful employment practice for an employer, *inter alia,* to discharge any individual . . .because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a). The ADEA prohibits similar discrimination "because of such individual's age." 29 U.S.C. §623(a)(1). On a claim of disparate treatment under both Title VII and the ADEA, the employee may offer direct or circumstantial evidence. *Earley v. Champion International Corp.*, 907 F. 2d 1077 (11th Cir. 1990);

6

*Apodaca v. Secretary of Dept. of Homeland Security*, 161 Fed. Appx. 897, 899 (11th Cir. 2006). The latter is evaluated pursuant to the familiar burden-shifting analysis framed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and summarized cogently by United States District Judge Myron H. Thompson in a "well-reasoned memorandum opinion" so characterized when affirmed on appeal:

> [A]n employee has the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of evidence. A "*prima facie* case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" ... If the employee establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee. This may be done by the employer articulating a legitimate, non-discriminatory reason for the employment decision, which is clear, reasonably specific, and worthy of credence. The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced...Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination. The employee may satisfy this burden either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful discrimination.

*Hall v. Ala. Assn. of School Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003) (internal citations omitted)

The ultimate issue in a gender or age discrimination claim is whether the defendant intentionally discriminated against the plaintiff. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983). The *McDonnell Douglas* analysis provides an invaluable method of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *Hall*, 326 F.3d at 1167 (*Mem.*

7

*Op.*, Thompson, J.), *quoting Burdine*, 450 U.S. at 255, n.8

### *2. Reduction in Force Claims*

The Eleventh Circuit has adopted a variant of the *McDonnell Douglas* test for reduction-in-force ("RIF") cases grounded on circumstantial evidence. Generally, the plaintiff in a RIF case can establish a *prima facie* case by demonstrating: (1) that she was in a protected group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact-finder might reasonably conclude that the employer intended to discriminate on the basis of the protected characteristic in reaching the decision at issue. *Earley*, 907 F. 2d at 1082.[10]

Where a particular job is entirely eliminated for nondiscriminatory reasons, in order for the plaintiff to prevail, she must show that she was qualified for another available job with her employer. Qualification for her current position is not enough. *Earley*, 907 F. 2d 1082-83. A plaintiff's burden in a RIF case is "more demanding than the showing in a garden-variety discharge case." *Banks v. FirstCity Mortgage, Inc.*, No. 1:04-cv-1477-MHS-CCH, 2005 U.S. Dist. LEXIS 43263, at *59 (N.D. Ga. June 29, 2005), *citing Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F. 2d 565, 567 (11th Cir. 1992).

With respect to the last prong – evidence by which a factfinder might reasonably conclude that the employer intended to discriminate – "the plaintiff must produce some evidence that the employer has not treated age [or other protected characteristic] neutrally, but has instead

---

[10] Because the Title VII and the ADEA legal standards are essentially the same, this analysis applies to Graham's Title VII claim of gender-based discharge as well as her ADEA claim for age-motivated discharge.

discriminated based upon that status. The evidence must lead the factfinder reasonably to conclude either that the defendant (1) consciously refused to consider retaining or relocating a plaintiff because of her age [ ], or (2) regarded age [ ] as a negative factor in such consideration." *Rowell v. BellSouth Corp.*, 433 F. 3d 794, 798 (11th Cir. 2005)(internal citations and quotations omitted).

### B.    Evidentiary Analysis

#### 1. *RIF elimination of position and discharge*

In response to Guy's claim of unlawful termination, Colonial denies that she qualified for another available position or that there is sufficient evidence for a factfinder reasonably to conclude that Colonial terminated her due to either her age or her gender. Conceding that Guy satisfies the first element of her *prima facie* case (i.e., coverage within a protected group as a female over 40), Colonial targets first her deficient showing on the second element, arguing:

> As to the second *prima facie* requirement, although Guy was qualified for her Manager position, which was eliminated during the restructuring of Wealth Management, qualification for her current position is not sufficient to establish her prima facie case. (citations omitted) Thus, absent a showing that there was an open position for which Guy was qualified at the time of her discharge, she cannot establish the second prong of her prima facie case. (citation omitted). [A]lthough Guy does not specifically allege that she either sought or was qualified for an open position at the time of her termination, based on the totality of her Complaint, it is reasonable to assume that she claims that she was qualified for the newly-created position of Program Director to which Sean Tesoro was promoted in January 2005.

> Assuming that Guy's claim is based on the alleged failure of Colonial to appoint (or promote) her to the newly-created Program Director position, Guy still cannot establish the second element of her *prima facie* case because the evidence compellingly establishes that she was **not** qualified for the position and that her qualifications, relative to those of Sean Tesoro, do not establish that there were any open positions for which Guy qualified. Furthermore, to the extent Guy claims that her position was not eliminated, but instead that her job duties were merely assumed by Mr. Tesoro, the evidence clearly refutes that naked allegation.

*Defs.' Mem.* at 28- 29 (emphasis included)

The court likewise concludes that Guy cannot establish her *prima facie* case because the evidence does establish credibly that she was not qualified for the new position or any other open positions. Her unsupported declaration that Tesoro merely assumed her former duties in her eliminated position and received a new job title is contradicted by materially undisputed evidence. This record includes documentation for both the duties of Guy's former position and the duties for the newly created position received by Tesoro as a promotion; clearly, some but not all of Guy's duties were subsumed within the newly created position.[11] Guy's sincerely expressed judgment that *all* her duties were reassigned to Tesoro in a re-titled position cannot alone sustain the *prima facie* case which is her burden. *See Minton v. American Bankers Ins. Group*, No. 02-12942, 2003 WL 21303330 (11th Cir. Feb. 6, 2003); *Edwards v. Baptist Health*, No. Civ. A. 2:04-cv-561A, 2005 WL 1331262 (M.D. Ala. June 3, 2005).

Nor can Guy establish the intentional discrimination required as the last prong of the *prima facie* case. Her evidentiary submissions raise no disputed issue warranting trial concerning Colonial's discriminatory animus in adopting the restructuring which eliminated her Manager position. *See, e.g., Minton* at *1, *citing Chapman v. AI Trans.*, 229 F. 3d 1012, 1030 (11th Cir. 2000). Guy's proffered attempt – by documenting Colonial's profitability and economic status – is insufficient to meet her burden. "[An] employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions. It is not [the court's] role to second-guess [the employer's] decision to respond to a loss...by cutting its workforce." *Beaver v. Rayonier, Inc.*, 200 F. 3d 723, 728

---

[11]*Green Af*f. at ¶¶19, 24, 25; Defs.' *Ex. E*; Defs.' *Ex. G.*

10

(11th Cir. 1999).[12]

Colonial's critical decisionmaker on the claims in controversy, Executive Vice-President Green, testified comprehensively regarding both the reasons she accepted the outside consultants' recommended restructuring of her Division and her basis for selecting Tesoro for the newly created position. Tesoro had completed several NASD examinations, unlike Guy and had experience in NASD products. Like Guy, Tesoro also had experience with the sale of insurance and fixed annuities. Unlike Guy, Tesoro has had prior experience selling NASD products. Guy does not dispute Tesoro's qualifications at all.

The court concludes that Colonial's articulated reason for Tesoro's selection is clear, reasonably specific, and worthy of credence. Guy has not come forward with any evidence that she was qualified for the new position other than her own conclusory allegations. "Conclusory allegations

---

[12] *See* Green *Aff*. at ¶¶ 22-29, explaining in pertinent part at ¶¶ 23 and 25:

> [T]he elimination of Susan Guy's position as Manager of the Family Insurance section of Wealth Management was not part of a concerted effort to rid the division of older female employees. Rather, the elimination of her position was part of a comprehensive organizational restructuring which included the elimination of over two dozen positions within various sections of the Welfare Management division; positions that were held by men and women of diverse age groups. Furthermore, of the 29 positions eliminated, 16 employees (55%) successfully reapplied for other positions within Colonial Bank.
>
> In evaluating Susan Guy's future within Wealth Management, I was faced with the undeniable fact that she could not serve as the Program Director because she lacked NASD licensing and had no experience whatsoever regarding the sale and marketing of NASD regulated products. Furthermore, Ms. Guy had an opportunity to obtain NASD licensing and, in fact, established that aspiration as a personal goal during her 2003 Employee Self Evaluation. The division not only encouraged that goal, but Helena Duncan, Executive Vice-President of Colonial Bank, directed her to obtain her Series 7 license. Nevertheless, Ms. Guy did not follow these directives and never sat for a single NASD licensing exam. Without proper licensing, Ms. Guy lacked an essential and necessary qualification for the Program Director position.

of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered…extensive evidence of legitimate, non-discriminatory reasons for its actions." *Elrod v. Sears, Roebuck & Co.*, 939 F. 2d 1466, 1473 (11th Cir. 1991) (internal citations and quotations omitted).

In sum, Colonial is correct that Guy's evidentiary submission discloses her inability "to offer any substantially probative evidence that age more likely than not motivated Colonial's decision either to eliminate her position or to appoint Tesoro rather than her to the Program Director position."[13] Guy does highlight the termination of women over the age of 40 as a result of the reorganization, but undisputed evidence indicates that the restructuring also eliminated jobs formerly occupied by younger (under age 40) employees as well. it is also noteworthy that Green, a female over the age of 40, decided to terminate Guy's employment and also to select Tesoro for the disputed new position. There is simply no probative evidence that Guy's protected characteristics– age or gender- motivated adversely the decisions made by Green, who shares these same protected characteristics. *See Elrod v. Sears, Roebuck & Co.*, 939 F. 2d 1466 (11th Cir. 1991).

Assuming *arguendo* that Guy's showing for a *prima facie* case sufficiently creates a disputed issue of fact, summary judgment would nonetheless be warranted for her failure to demonstrate pretext in Colonial's stated reason for its decision. Colonial has articulated a legitimate nondiscriminatory reason for its decision to terminate Guy and its subsequent decision to promote Tesoro into the newly created position. Guy's evidentiary submissions are insufficient to demonstrate any discriminatory intent underlying Colonial's decision to eliminate her position as a result of

---

[13]Defs.' Br. at 33.

reorganization. Furthermore, also deficient is her evidence that any discriminatory intent triggered Colonial's appointment of Tesoro, instead of Guy, to the new post.

As the Eleventh Circuit has explained, Guy must show that the disparities between her qualifications and the qualifications of the person who received the promotion were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.*; *see also Ash v. Tysons Foods, Inc.*, ___ U.S. at ____, 126 S.Ct. 1195, 1197-98 (2006) (approving this standard for inferring pretext from superior qualifications). Guy has not done so. Guy offers no credible evidence to undermine Green's informed opinion that Teroso was best suited for the position. More importantly, there is no showing at all that Green based her selection of Teroso on criteria– whether objective or subjective– which masks her discriminatory animus. *See Chapman v. AI Trans.*, 229 F. 3d 1012, 1034 (11th Cir. 2000).

### 2. *Post-termination "Failure to Promote" to new position*

In order for Guy to establish a *prima facie* case of discrimination for Colonial's failure to promote her to the newly created position after eliminating hers,[14] she must show that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *See Wilson v. B/E Aerospace, Inc.*, 376 F. 3d 1079, 1089 (11th Cir. 2004).

---

[14]In deference to the plaintiff's *pro se* status, the court construes liberally her complaint but should not be interpreted as deciding that the complaint states adequately this specific claim of discrimination.

Here, Colonial proffered a legitimate and non-discriminatory reason: Teroso's superior qualifications. Thus, the burden shifted to Guy to "meet [the proffered] reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Brooks v. County Comm'n of Jefferson County*, 446 F. 3d 1160, 1163 (11th Cir. 2006). In other words, to establish pretext, Guy must demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Comm'n of Jefferson County*, 446 F. 3d 1160, 1163 (11th Cir. 2006).

In the context of a promotion:

> a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where...the reason is one that might motivate a reasonable employer.

*Alexander v. Fulton County*, 207 F. 3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted). To the extent that Guy grounds her complaint on a separate claim arising from non-selection to the newly created position, this claim too must fail for the evidentiary deficiency noted.

### IV. CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the *Recommendation of the Magistrate Judge* that --

1. the ***Motion for Summary Judgment of Defendants The Colonial Bank, N.A. and The Colonial BancGroup, Inc.* (Doc. 17) be GRANTED**; and

2. a Final Judgment be entered against Plaintiff, Susan H. Guy, and in favor of Defendants, Colonial Bank, N.A., and The Colonial BancGroup, Inc.

**It is further ORDERED** that the parties file any objections to this Recommendation not later than December 28, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 15th day of December, 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE