IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SUSAN H. GUY | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:06-CV-00271-WKW-DRB |
| COLONIAL BANK, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFF SUSAN H. GUY'S RESPONSE IN OBJECTION TO THE RECOMMENDATION OF THE MAGISTRATE JUDGE REGARDING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS COLONIAL BANK, ET AL**

COMES NOW Plaintiff Susan H. Guy to file her response in objection to the recommendation of the Magistrate Judge regarding the motion for summary judgment filed by Defendants, Colonial Bank, et al.

## RESPONSE

As instructed in the Recommendation of the Magistrate Judge, Plaintiff (hereinafter referred to as Guy) submits her objections to the specific findings referenced in the Magistrate Judges' Recommendation.

Notable in the Magistrate Judges' Recommendation, and of apparent weight, is the continued presumption that a lengthy and comprehensive restructuring process was initiated in mid-2004 by defendants and continued through 2006. Restructuring did not begin until May, 2005, well after Guy's termination *and* after initial filing of an EEOC action against defendants by Guy. The termination of Rick Peterson in August, 2004 was not part of reorganization, but was due to low production according to previously filed affidavits. Contracting with Huntington Consulting Services was completed in mid-October, 2004 and year end broker meetings to kick off 2005 sales took place the week of November 21, 2004 with a sales contest cruise to be taken in April, 2005 for all of the producers whose sales met the qualifying goals.

When defendants did initiate restructuring plans in May, 2005, it was with a mandatory meeting of all employees to announce these intentions and to review the process that would be followed. Of significance is the announcement that *it had not yet been determined which positions would be affected* in the restructuring, but determination and announcement of those affected would be done by the end of July, 2005 so that there would be ample notice and time to bid and apply for alternate positions within the Colonial system as well as time off to interview outside the company where necessary. In this instance, defendants followed guidelines that would be typical for a company undergoing a reduction in force and that employed more than 100 people under the WARN Act (Worker Adjustment Retraining and Notification Act)(Exhibit C) by giving potentially affected employees 60 days notice. Guy acknowledges that WARN does not necessarily apply in this situation as Colonial is not a plant or factory, however; the WARN Act serves to provide general guidelines for reduction in force initiatives. Also of primary importance in determining the individuals who will be affected in a reduction in force is the consideration of seniority. Guy was the most senior employee in the Wealth Management Department with nearly 19 years of service. The listing of employees whose positions were eliminated effective mid-September 2005 (more than 20) is an indicator that reorganization began in May when reorganization plans were announced. It appears that Colonial intends to include every employee terminated since the promotion of Linda Green to Executive Vice President of Wealth Management as one included in a plan of reorganization as evidenced by the inclusion of Rick Peterson, Susan Guy, Ann Fuller, Terri Meeves and Kitty Graham who were not part of an overall reorganization plan. Should this be allowed, one could assume that all employee terminations in a company are a result of reorganization at some level. As noted in Guy's initial discrimination complaint, she was terminated *without forewarning* and no attempt was made by defendant to place Guy in any other position. Conversely, Linda Green informed

2

Guy in her exit interview that there was no place for her at Colonial or in the Wealth Management Department. Guy contends that a comprehensive review of the jobs posted in Human Resources at the time of her dismissal would reveal there were positions available at Colonial for which she was qualified, including that of Sales and Service Manager which was awarded to Tesoro. Standard procedure in reorganization or reduction in force programs indicates that employees are typically notified in advance and given ample time, *while still employed*, to find other employment, as was the procedure used by Colonial when reorganization was implemented. (See exhibit B) For these reasons, Guy contends that claims of her termination being involved in overall reorganization are a ruse to cover the intentional discrimination against her, particularly in consideration that Guy was the employee with the most seniority in Wealth Management.

Second, in support of her objection to the Magistrate Judges' Recommendation, Guy submits that it would be impossible to determine the qualifications for a position without first reviewing the full and complete job description for that position. Defendants have not produced a formal job description for the position of Sales and Service Manager; the referenced position awarded to Tesoro in January 2005, but have relied upon the present job description for Program Director to substantiate the qualifications for Sales and Service Manager. Reliance only upon the testimony of Linda Green that the Sales and Service Manager position and the Program Director position are one and the same would be unfair to Guy and would have the appearance that the court accepts the unproven testimony of one party but rejects the other. Plaintiff contends that it is unlikely all duties would have remained the same since Tesoro's initial promotion to Sales and Service Manager given that he has since received two other promotions and promotions are not generally awarded without position enhancements and compensation increases. Additionally, Tesoro was initially responsible for back office insurance and fixed

3

annuity operations issues and those have since been outsourced to UVest. The positions formerly responsible for these functions were eliminated in September 2005 as part of the reorganization. Therefore, at least part of Tesoro's initial responsibility changed and the number of employees he was responsible for changed. It is reasonable to assume that Tesoro's responsibilities changed as the reorganization took effect and some of his employees left. Defendants' contention that Guy was unqualified for the position of Sales and Service Manager as she had not completed her studies for NASD licensing would indicate that anyone lacking in licensing required in a job description is unqualified for the job. In this case, the vast majority of employees in the Wealth Management division, including Linda Green, would have been considered to be unqualified for their positions. Plaintiff contends that a review of current staffing and their qualifications in comparison to their job descriptions would produce evidence that many still do not have the required licensing outlined in their job descriptions, and following the line of reasoning used by defendants in this case, their employment should be terminated. Green has testified that the Sales and Service manager position is a combination of the former Family Insurance Manager and Product Manager positions. This being the case, it begs to be explained why Ann Fuller, the former product manager, was also not given opportunity to fill the Sales and Service Manager position considering that she has held NASD licensing for over 10 years and sold NASD products throughout her 12 year tenure at Colonial. Instead, she was terminated on the same day as Guy under the same premise that her job was being eliminated. Colonial's proffered reasons for promoting Tesoro instead of Guy are beyond belief and appear to be used as a mask to cover true discriminatory intentions in consideration of the fact that Colonial intentionally did not offer the Sales and Service Manager position to any female who was qualified by reason of licensing and/or sales experience, including plaintiff.

Contrary to the defendants' testimony, Tesoro had no experience in selling NASD products and he had only obtained his Series 7 license in October 2004 – three months prior to his promotion. In his former jobs he served as an insurance company wholesaler – someone who travels and solicits sales people to offer the products his company manufactures – NOT someone who sells the products themselves. Therefore, defendants' claim that Tesoro was more qualified than Guy by virtue of his previous NASD experience is false as he had no previous NASD experience. The attached (Exhibit A) recent job posting by Colonial will support the fact that NASD licensing is not a "must have" prior to acceptance of a position in Wealth Management. In this posting, the applicant is informed they would have four months from the date of hire to obtain requisite licensing. As it is standard practice to allow completion of licensing after acceptance and appointment to a position, defendants should not be allowed to use a licensing issue as a mode of defense in this discrimination claim. Additionally, Guy's experience is misrepresented by Green in an attempt to cover up the true discriminatory actions intended by the termination of Guy's employment. Guy worked regularly with NASD products as regards contracting, strategic planning, and training as a senior staff member of Wealth Management. Separation of duties by product lines was implemented only at the retail sales level and in back office operations processing of securities transactions. The testimony offered by Linda Green regarding NASD licensing qualifications and Guy's personal pursuit of NASD licensing is intended to misdirect the court and is false where Green claims Guy had "no experience whatsoever regarding the sale and marketing of NASD regulated products". Green is well aware that a "window" was never opened for Guy to sit for NASD exams and that she was pursuing this license on a personal level. Green is also aware that Guy was never instructed to obtain NASD licensing as a requirement of her job or as a condition for continued employment.

Guy has established that Tesoro was not more qualified than she for the Sales and Service Manager position, as described in the January 18, 2005 memo sent to senior management by Green, and that she was vastly more qualified by virtue of her experience and responsibilities over the 19 year course of her career at Colonial. Guy maintained full lines life, health and disability licensing as well as was awarded a professional designation, FLMI (Fellow, Life Management Institute) following a three year course of independent study covering all aspects of agency management, sales, marketing, accounting, etc. for the insurance and financial services industries. Guy is aware that Green's memo of January 18, 2005 does not contain a complete job description of the Sales and Service Manager position, and absent the production of a full job description by defendants, it is assumed that the most comprehensive and important aspects of the position are contained in the memo. Having no other valid reason for termination of Guy, and acting upon the advice of Dave Awbrey, the middle aged male consultant from Huntington Consulting Services whose background mirrors that of Tesoro in that he was an insurance company wholesaler, and who was known to desire to work with someone of similar background to himself, plaintiff can reasonably assert that intentional discriminatory purposes were Greens' basis as the reason for her termination. It is without merit that Green is also a member of the protected class as it has already been established that same sex discrimination is recognized by the courts.

IN CONCLUSION, Guy submits that there are a number of genuine factual issues in this case that warrant denial of defendants' motion for summary judgment and that these issues can only be resolved by a fact finder. Guy has not submitted additional affidavits from those who can validate her claims herein as the individuals are still employed by Colonial and plaintiff does not wish to endanger their positions unless and until it would be absolutely necessary during examination at trial. In light of these issues, it seems that the court would be unable to remove

all doubt against the defendant and therefore, be unable to grant a Motion for Summary Judgment.

    WHEREFORE, PREMISES CONSIDERED Plaintiff Susan H. Guy respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Done this 27th day of December, 2006.

*[signature: Susan H. Guy]*
Signature of Plaintiff Susan H. Guy

974 Lewis Rd.
Wetumpka, AL 36022
334-529-2567

Address and Telephone Number of Plaintiff