IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SUSAN H. GUY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO.: |
| vs. ) | 2:06 CV271-WKW |
| ) | |
| THE COLONIAL BANCGROUP, INC. ) | |
| and COLONIAL BANK, N.A., ) | TFM Magistrate Judge Assigned |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO
PLAINTIFF'S OBJECTION TO THE RECOMMENDATION OF THE
<u>MAGISTRATE JUDGE REGARDING SUMMMARY JUDGMENT (DOC. NO. 31)</u>**

**COME NOW** Defendants, The Colonial BancGroup, Inc. and Colonial Bank, N.A. (collectively, "Colonial"), and submit the following Memorandum of Law in Response to Plaintiff Susan Guy's Objection to the Recommendation of the Magistrate Judge Regarding Defendants' Motion for Summary Judgment (Doc. no. 31).

## I.    INTRODUCTION

On January 18, 2005, Colonial eliminated Plaintiff's position as Family Insurance Manager and terminated her employment pursuant to a comprehensive reorganization of its Wealth Management division. Plaintiff Susan Guy commenced this action against Colonial on March 24, 2006, alleging that Colonial discriminated against her by terminating her employment on the basis of sex and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 671, *et seq*. Colonial moved for Summary Judgment on all of Plaintiff's claims, and the parties submitted their respective briefs.

1

On December 15, 2006, Magistrate Judge Delores Boyd issued her Report and Recommendation to the District Court, recommending that the Court grant Colonial's summary judgment motion and enter judgment in its favor on all of Plaintiff's claims. (Doc. no. 30). On December 28, 2006, Plaintiff Guy submitted her Response in Objection to the Report and Recommendation of the Magistrate Judge. (Doc. no. 31).

Plaintiff Guy's objections are primarily a collection of conclusory and unsubstantiated allegations. Not only did the Magistrate Judge consider and reject these same arguments now raised by Plaintiff in her objections, but more importantly, her objections do not create any genuine issue of material fact that would preclude entry of summary judgment in Colonial's favor. Therefore, for the reasons set forth more fully below, the Court should reject Plaintiff's objections, adopt the Magistrate's Recommendation in its entirety and enter summary judgment in favor of Colonial on all of Plaintiff's claims.

## II.   ARGUMENT

### A.   THE MAGISTRATE'S FINDINGS ARE SUPPORTED BY UNDISPUTED FACTS AND SOUND LAW.

Plaintiff alleges that Colonial discriminated against her on the basis of sex and/or age by promoting Sean Tesoro, a younger male, to the newly created position of Program Director. Plaintiff contends that she was qualified for the position, which requires the applicant, among other things, to formulate and oversee sales training of Colonial's Financial Consultants (brokers) regarding NASD regulated products. As found by the Magistrate, however, the evidence established otherwise.

The Magistrate construed the evidentiary record most favorably to Plaintiff and based her opinion on an undisputed chronology summarized from Guy's Affidavit and the affidavits of Linda Green, Executive Vice President of the Wealth Management Division of Colonial Bank

and Tara Gibson, Human Resources Area Manager of Colonial's Montgomery BancGroup. (Doc. no. 30) at 2 and fn. 2. After outlining generally the applicable analytical framework governing age and gender discrimination claims, the Magistrate concluded that "the evidentiary record of affidavits, business, and EEOC records support[ed] Defendants' contentions." *Id.* at 6. In particular, the Magistrate correctly found that Plaintiff Graham failed to establish a *prima facie* case for either claim because the evidence established "that she was not qualified for the new position or any other open position" and that "[h]er declaration that Guffey merely assumed her former duties in her eliminated position and received a new job title [was] contradicted by materially undisputed evidence." (Doc. no. 30) at 10. In particular, the Magistrate found that contrary to Plaintiff's unsupported opinion, Colonial did not merely re-title her position and transfer her duties to Sean Tesoro, a younger male Colonial employee. *Id.* Rather, the undisputed and credible evidence established that the Program Director position was a new position that included duties never performed by Plaintiff and that she could not perform because she lacked the necessary NASD licenses required to market and sell securities and to oversee the training of others (Colonial's Financial Consultants) to market and sell NASD regulated products. *Id.*

Second, the Magistrate Judge found that even if Plaintiff could show that she was qualified for the Program Director position, she failed to establish the third element of her *prima facie* case because she offered no evidence of discriminatory animus by Colonial in adopting the restructuring which eliminated her position. *Id.* Third, the Magistrate found that Colonial's articulated reason for the selection of Sean Tesoro was reasonably specific and worthy of credence, *i.e.*, that, unlike Plaintiff, Tesoro held several NASD licenses and had experience selling and marketing NASD products. *Id.* at 11. In sum, the Magistrate concluded that there

was no probative evidence that Plaintiff's protected characteristics – age or gender – motivated adversely the decisions made by Colonial. *Id.* at 12.

Finally, with respect to Plaintiff's failure to promote claim, the Magistrate correctly found that, other than questioning the wisdom of Colonial's decision, Plaintiff offered no evidence to rebut Colonial's proffered legitimate and non-discriminatory reason for promoting Tesoro rather than her to the Program Director positions, *i.e.*, Tesoro's qualifications. *Id*. at 13-14.

In sum, the Recommendation of the Magistrate is well-grounded in fact and law and, therefore, the Court should adopt the Recommendation in its entirety and enter summary judgment in favor of Colonial on all of Plaintiff's claims.

**B.   PLAINTIFF'S OBJECTIONS DO NOT CREATE AN ISSUE OF FACT.**

    **1.   PLAINTIFF'S UNSUPPORTED ALLEGATIONS REGARDING THE HISTORY AND TIMING OF THE RIF DO NOT CREATE AN ISSUE OF FACT REGARDING ANY OF HER CLAIMS.**

In response to the Magistrate's well-reasoned Recommendation, Plaintiff offers only conclusory, unsubstantiated and irrelevant allegations, which do not create a disputed issue of material fact as to any of her claims. First, Guy, reciting a series of unsupported opinions and allegations, criticizes the Magistrate's alleged "presumption that a lengthy and comprehensive restructuring process was initiated in mid-2004 by defendants and continued through 2006." (Doc. no. 31) at 1-2. Contrary to Plaintiff's assertion, the Magistrate did not merely "presume" the facts regarding the nature and timing of the restructuring; rather she based her recitation of chronology set forth by Plaintiff in her affidavit as well as the ***undisputed*** and sworn affidavits of Linda Green, Executive Vice President of the Wealth Management Division of Colonial Bank and Tara Gibson, Human Resources Area Manager of Colonial's Montgomery BancGroup. (Doc. no. 30) at 2, n.2. In fact, Plaintiff's latest unsworn allegations set forth in her objections

regarding the nature and history of the RIF are explicitly rebutted by the undisputed and sworn affidavit testimony of Linda Green. *See* L. Green Aff. (Doc. no. 17-3). Furthermore, Plaintiff's opinion that Colonial should have implemented the RIF differently or provided her more notice that her position was being eliminated is irrelevant because neither her opinions nor her other unsubstantiated allegations establish that Guy was qualified for the Program Director position or that Colonial's decision to promote Sean Tesoro rather than Plaintiff to the position was motivated by discriminatory animus.[1]

In sum, Plaintiff merely asks the Court to substitute its judgment for the informed business judgment of Colonial regarding the best process for addressing the restructuring of the Wealth Management Division and for implementing the RIF. As cited by the Magistrate in her Recommendation, that result would be clearly contrary to the controlling case law of this Circuit. (Doc. no. 30) at 10-11 (citing *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 728 (11th Cir. 1999) ("[An] employer is free to choose whatever means it wants, so long as it is not discriminatory in responding to bad economic conditions. It is not [the court's] role to second guess [the employer's] decision to respond to a loss . . . by cutting its workforce.")); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (internal citations omitted); *Hellums v. Webster Indus., Inc.*, 97 F. Supp.2d 1287 (M.D. Ala. 2000) (holding that the court should avoid second guessing hiring decisions of employer in the absence of any evidence that the decision was based on age). For this reason, the Court should reject Plaintiff's objection,

---

[1] As "evidence" in support of her objections, Plaintiff submits a wholly irrelevant article in *Southern Business Review* authored by a California financial analyst regarding suggested guidelines for implementing RIFs and a copy of an inapplicable federal law (The Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §2101). (Doc. No. 31) at Exs. B & C. WARN, however, is inapplicable because Colonial's RIF did not trigger the 50-employee layoff requirement. WARN applies to certain plant closings or temporary shut downs resulting "in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." *See* 29 U.S.C. § 2101 (a)(2).

accept the Recommendation of the Magistrate Judge, and enter summary judgment in favor of Colonial on all of Plaintiff's claims.

> 2. **PLAINTIFF MERELY RE-HASHES THE SAME UNSUPPORTED ARGUMENTS WHICH THE MAGISTRATE JUDGE CAREFULLY CONSIDERED AND REJECTED AS UNSUPPORTED BY THE EVIDENCE.**

The second half of Guy's argument (pages 3-7) consists of unsworn and unsupported assertions and opinions regarding a plethora of issues concerning Sean Tesoro's NASD sales experience, Plaintiff Guy's alleged experience and her opinion that the NASD licensing requirement was an unnecessary minimum qualification for the position, and other red herrings regarding other allegedly qualified employees who were not selected for the Program Director position.[2] Colonial addressed and rebutted most, if not all, of these unsupported allegations with admissible and undisputed evidence in its summary judgment reply brief. (Doc. No. 26). The Magistrate Judge reviewed and thoughtfully considered Plaintiff's arguments, but concluded that they did not create any issue of fact as to her claims. Plaintiff, nevertheless, persists in her naked allegations that are unsupported by sworn testimony or other competent evidence.[3] Colonial, therefore, will address Plaintiff's primary arguments *ad seriatim*.

> a. **COLONIAL SPECIFICALLY REBUTTED PLAINTIFF'S IRRELEVANT ALLEGATION CONCERNING THE PROGRAM DIRECTOR JOB DESCRIPTION.**

Plaintiff persists in her claim that Colonial failed to submit the appropriate "Sales and Service Manager" job description and, instead, erroneously relied on the job description for the

---

[2] *Holifeld v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating that "conclusory assertions . . . in the absence of supporting evidence are insufficient to withstand summary judgment."); *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996) (stating that, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.") (internal citations omitted).

[3] Guy attempts to excuse her failure to include sworn testimony to support her claims: "Guy has not submitted additional affidavits from those who can validate her claims herein as the individuals are still employed by Colonial and plaintiff does not wish to endanger their positions unless and until it would be absolutely necessary during examination at trial." (Doc. No. 31) at 6. The Court should reject Guy's assertions because they are unsubstantiated and lack credence.

Program Director position. Colonial directly addressed this allegation in its October 6, 2006 Reply Brief, (Doc. no. 27) at 3, n. 2. In particular, Colonial established through sworn affidavit testimony that Linda Green changed the formal title of the position from Sales and Service Manager to Program Director to better reflect the functions of the position:

> Although as Director of the Wealth Management division I originally announced on January 18, 2005 that Sean Tesoro had been appointed as "Sales and Service Manager," his title was later changed to "Program Director" to better reflect the functions of the position. The qualifications of and duties assigned to the position, however, have remained the same since Mr. Tesoro's appointment to the position. This title change was made after the elimination of Ms. Guy's position as Family Insurance Manager.

*See* L. Green Supp. Aff. (Doc. no. 28) at Ex. M, ¶3. Plaintiff has no personal knowledge of the events surrounding the job title change because it was accomplished after the termination of her employment. Other than claiming that it would be unfair for the Court to accept as true Linda Green's testimony regarding these events, Plaintiff does not and cannot rebut Green's sworn testimony regarding the change to the job title.

  **b.**  **THE UNDISPUTED EVIDENCE ESTABLISHED THAT, UNLIKE PLAINTIFF, SEAN TESORO WAS WELL-QUALIFIED FOR THE PROGRAM DIRECTOR POSITION.**

Second, notwithstanding Plaintiff's unsupported assertion that Sean Tesoro had no experience selling NASD products, *see* Plaintiff's Objection (Doc. no. 31) at 5, the undisputed affidavits of Tesoro and Linda Green, and which the Magistrate cited in her opinion, establish that at the time he was selected for the Program Director Position, Tesoro had over 10 years of experience marketing and selling investment products, including NASD licensed products, to Broker Dealers and financial institutions and their registered representatives; that he had been employed as a regional manager by numerous investment companies, including Colonial, Putnam Investments, Sun Life Financial, Allstate Financial Distributors, The Travelers and

MassMutual Financial Group; and that when he was hired by Colonial in 2004, he was responsible for selling investment products, including NASD licensed products, through five Colonial branch banks located in his sales territory. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶4, 6. Even the announcement of Tesoro's promotion to the position cited his "significant industry experience" with brokerage providers as a basis for his selection in addition to his experience regarding fixed annuities and insurance. 01/18/05 Announcement (Doc. no. 23) at Ex. E. Plaintiff failed to rebut this evidence. Thus, in stark contrast to Plaintiff's lack of NASD qualifications, at the time of his promotion, Tesoro possessed the requisite NASD licenses as well as extensive experience selling, marketing and training others to sell and market NASD regulated products.

Furthermore, Plaintiff's allegation that Tesoro had held his Series 7 license for less than a year at the time he was promoted is extremely misleading. While it is true that Tesoro obtained his Series 7 license in May 2004, the undisputed evidence establishes that he obtained both his NASD Series 6 (Investment Company and Variable Contracts Products Representative Exam) and NASAA Series 63 (Uniform Securities Exam) licenses in 1994. S. Tesoro Aff. (Doc. no. 17) at Ex. K, ¶¶ 4, 12. In other words, at the time of his promotion, Tesoro, unlike Guy, held three different NASD licenses, two of which he had held for almost 11 years.

Moreover, the fact that Colonial promoted Sean Tesoro rather than Anne Fuller (who held NASD licenses) to the Program Director position does not establish that Colonial considered inconsequential the NASD licensing requirement. In fact, Guy's speculation is specifically rebutted by the undisputed affidavit testimony of Linda Green because she clearly attests that Guy's lack of NASD licensing and experience was a significant factor in her decision not to select Guy for the Program Director position:

> 25. In evaluating Susan Guy's future within Wealth Management, I was faced with the undeniable fact that she could not serve as the Program Director because she lacked NASD licensing and had no experience whatsoever regarding the sale and marketing of NASD regulated products. . . .

L. Green Aff. (Doc. no. 17) at Ex. A, ¶25. Again, Green's testimony, unlike Plaintiff's unsupported speculation and conjecture, stands unrebutted.[4]

      **c.**      **IT IS UNDISPUTED THAT PLAINTIFF FAILED TO MEET THE MINIMUM QUALIFICATIONS FOR THE PROGRAM DIRECTOR POSITION.**

In contrast, the undisputed evidence establishes that Plaintiff failed to meet the minimum qualifications for the Program Director position because she lacked the required NASD licensing needed to perform the job. Plaintiff's attempt to bolster her qualifications by claiming that she worked in and around NASD products is misleading because it is undisputed that she did not hold a single NASD license at the time Colonial filled the Program Director position and that she never directly sold, marketed or trained others to sell or market NASD-regulated products. Colonial does not dispute Plaintiff's claim that she had extensive experience regarding the sale and marketing of insurance and fixed annuities. That fact, however, is irrelevant to the issue of whether she met the NASD licensing requirements necessary to perform the NASD-related functions representing 60% of the Program Director's duties. *See* Tesoro Aff. (Doc. no. 17) at

---

[4] It is also important to note that Anne Fuller did not assert an age or gender discrimination claim against Colonial based on the promotion of Sean Tesoro to the Program Director position. Furthermore, Plaintiff has offered no evidence that Anne Fuller was equally or more qualified than Tesoro for the Program Director position or that she was even interested in the position. Even if Plaintiff could offer such evidence, it would not establish that Colonial's decision to select Tesoro rather than Plaintiff was motivated by her sex or her age. As established in Colonial's original brief, Tesoro had many attractive qualities that lead to his selection, including a B.A. from Yale University, Series 6, 7 and 63 licenses, several state insurance licenses, and 10 years of experience marketing and selling investment products to clients, including serving Colonial as a customer while employed by MassMutual as a regional sales manager. *See* Colonial Sum. Judg. Br. (Doc. no. 18) at 32-33; Tesoro Aff. (Doc. no. 17) at Ex. K at ¶¶4, 5, 12.

9

Ex. K, ¶14.[5]  Without proper licensing, Plaintiff lacked an essential and necessary qualification for the Program Director position.  In contrast, Sean Tesoro had experience on both sides of the equation – insurance/fixed annuities and equities.  As previously established, his bona fides regarding his qualifications to market, sell and train others regarding NASD-licensed products are undisputed.

Plaintiff's assertion that she worked in and around NASD products and, therefore, was qualified for the Program Director's position even in the absence of proper NASD licensing, is akin to a paralegal claiming that she can practice law without a law license.  A paralegal may have the skills to perform certain attorney functions, but without a license to practice law or the extensive training and experience needed to perform the work, her utility and productivity would be extremely limited because she could not perform essential functions of the job.  That is precisely the case here.[6]  Plaintiff's personal belief she was at least or more qualified than Tesoro is insufficient to withstand summary judgment.  *See, e.g., Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (plaintiff cannot prove pretext by asserting baldly that she was better qualified than the person who received the position at issue).

---

[5]  The job description for the Program Director position explicitly sets forth the NASD licensing requirements:

> **Education and Experience**
>
> Bachelor's degree in Finance, Accounting, Business.  Seven or more years sales or investment experience.  Bank brokerage experience and experience with product providers a plus.  **Completion of Series 7, 65, 24, and 63 securities examinations,** completion of Life/Health/Disability and Variable Life Insurance License; clean CRD—***good standing with NASD and SEC***.

Program Director Job Description (Doc. no. 17) at Ex. E. (emphasis added).

[6]  Plaintiff's claim that she had 19 years of experience is also misleading because she had only been employed in the Wealth Management Division since 1997 and, more importantly, she does not dispute that she does not hold a single NASD license and had no direct experience selling or marketing, or training others to sell or market, NASD regulated product (stocks, bonds, mutual funds or variable annuities).

In essence, Plaintiff asks the Court to re-write the Program Director job description and find her qualified based on her opinion that NASD licensing is unnecessary to perform the job. That result would be directly contrary to well-settled principles of employment law that (1) an employer is entitled to establish legitimate, non-discriminatory minimum qualifications for a position, s*ee, e.g Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1218 (7th Cir. 1980), *cert. denied* 450 U.S. 959 (1981) and *Coleman v. St. Regis Corp.,* 1985 WL 350, *4 (N.D. Ala. 1985), and (2) the Court may "not second-guess a company's legitimate assessment of whether an employee is qualified for a particular position." *Steger v. General Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003). In sum, as properly found by the Magistrate, Plaintiff, lacking the requisite NASD licensing, failed to establish a *prima facie* case for any of her claims because she could not establish that she was qualified for the Program Director position.[7]

Even assuming *arguendo* that Plaintiff could establish that she was qualified for the position and, in fact, was better qualified than Sean Tesoro, her *prima facie* case still fails because, as found by the Magistrate, Plaintiff produced no evidence that Colonial's decision to select Tesoro rather than her was motivated by age or gender. (Doc. no. 30) at 12-13; *see also Denney v. City of Albany,* 247 F.3d 1172, 1188 (11th Cir. 2001) (The court must "not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive.").

---

[7] *See e.g.*, *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064 (1990) (*prima facie* case under the ADEA required the plaintiff to establish that she was qualified for the position at issue); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that plaintiff must establish that she was qualified to do the job to sustain her *prima facie* case under Title VII); *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (holding that in a failure to promote claim, to sustain a *prima facie* case, the plaintiff must establish that she was qualified for the position).

      **d.**      **THE FACT THAT THERE ARE POSITIONS WITHIN THE WEALTH MANAGEMENT DIVISION THAT ALLOW CANDIDATES TO OBTAIN APPROPRIATE LICENSING AFTER THEIR HIRE DATE IS IRRELEVANT TO PLAINTIFF'S CLAIMS.**

Fourth, citing the recent job announcement for the Internal Wholesaler position, (Doc. no. 31) at Ex. A, a position wholly different than the Program Director position at issue, Plaintiff attempts to attack Colonial's NASD licensing requirement based on the assertion that other positions within the Wealth Management Division permit candidates a grace period to obtain appropriate licensing.  Pl's Objection (Doc. no. 31) at 4-5.  Currently, the Internal Wholesaler is responsible for providing training to Licensed Bankers regarding non-NASD licensed products such as life insurance and fixed annuities.  However, as noted on the face of the job description submitted by Plaintiff, Colonial made the conscious decision to provide a grace period for the Internal Wholesaler to obtain certain NASD licenses based on future plans to expand the duties of Licensed Bankers to include the sale of mutual funds, which will require NASD licensing.[8]  In other words, the Internal Wholesaler job description anticipates the additional NASD licensing requirements as the role of Colonial's Licensed Bankers expands.

In contrast, as established by the undisputed testimony of Linda Green, the Program Director supervises the sales training and product support provided by two Regional Sales and Development Wholesalers and, consequently, to perform the job on day one, the Program Director is required to required to hold certain NASD licenses and to be in good standing with the U.S. Securities and Exchange Commission and the National Association of Securities Dealers.  *See* L. Green Aff. (Doc. no. 17) at Ex. A, ¶¶19-20, 24.  In other words, the fact that

---

[8]  The Internal Wholesaler Job Description submitted by Plaintiff specifically states "Responsible for the analysis and sales of fixed annuities, but as the department expands, ***their area of expertise will also expand to additional products lines, such as mutual funds, index annuities, and variable annuities***. . . .  Appropriate licenses are required, or must be obtained within 4 months of hire.  This includes additional licenses that will become necessary ***as the products expand*** (Life Insurance, Series 6, Series 63)."  (Doc. no. 31) Ex. A.  (emphasis added).

12

Plaintiff can produce a job description for a single position within the Wealth Management division that does not immediately require NASD licensing is wholly irrelevant to her claims and does nothing to rebut the undisputed evidence that she lacked the objective and nondiscriminatory minimum qualifications Colonial concluded were necessary to perform the job.

Furthermore, if, as urged by Plaintiff, the Court could compel Colonial to hire an unqualified applicant and to provide applicants additional time to satisfy the minimum qualifications of the position, then virtually any applicant would be able to meet the qualifications element of a *prima facie* case by simply expressing their intention to become qualified at some future date. More importantly, employers such as Colonial would be placed in the untenable position of being forced to fill a vacancy with an unqualified candidate who could not perform essential duties of the position when hired.[9] In the instant case, allowing Plaintiff additional time to obtain the necessary NASD licenses would have left Colonial without a Program Director to perform any of the NASD-related duties. Clearly, that would be an absurd result and not one required by law.

In sum, as properly found by the Magistrate, Plaintiff failed to establish a *prima facie* case under Title VII, the ADEA or as a failure to promote claim because she could not establish that she was qualified to do the job.[10]

---

[9] Of course, a private company can always voluntarily choose to hire an employee who may obtain the requisite license at some established future date, *e.g.*, a law firm hiring a law school graduate awaiting the bar exam results. Even so, that lawyer would be restricted from certain functions until she obtained her license.

[10] For each of her claims, ADEA, Title VII and failure-to-promote, Plaintiff must demonstrate that she was qualified for the position in question in order to establish her *prima facie* case. *See e.g.*, *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064 (1990) (*prima facie* case under the ADEA required the plaintiff to establish that she was qualified for the position at issue); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that plaintiff must establish that she was qualified to do the job to sustain her *prima facie* case under Title VII); *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (holding that in a failure to promote claim, to sustain a *prima facie* case, the plaintiff must establish that she was qualified for the position).

      **e.** **LINDA GREEN IS NEITHER AN APPROPRIATE COMPARATOR, NOR IS COLONIAL'S TREATMENT OF HER EVIDENCE OF DISCRIMINATORY INTENT BY COLONIAL.**

Plaintiff further alleges that there is evidence of Colonial's discriminatory intent because Linda Green, the decision maker with regards to Plaintiff's promotion claim, was promoted to her position as Executive Vice President of the Wealth Management Division despite the fact that she did not hold the NASD licenses required by the job description. In other words, with regards to the NASD licensing requirement, Plaintiff argues that she was treated differently than a similarly situated employee. Again, Colonial completely rebutted those allegations in its summary judgment reply brief. (Doc. no. 28) at 15-17.

In particular, Green is not a similarly situated comparator because she is a member of the same protected class, *i.e.*, female over the age of 40. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (plaintiff must show that the employer treated similarly situated employees outside the class more favorably; *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997) (same). Second, Linda Green is not a valid comparator because she was promoted to a completely different, high-level managerial position in the company and was specifically selected for the position by the President and CEO of Colonial Bank, Bobby Lowder. R. Lowder Aff. (Doc. no. 28), Ex. L at ¶4. In filling an upper-level management post, some degree of flexibility is allowed, as the decision maker must balance employees' different strengths and qualifications, predicting all the while who will be the best ambassador for the company and most effectively serve its business needs. *See, e.g.*, *Langerman v. Thompson*, 155 F.Supp.2d 490, 500 (D. Md. 2001). Third, as established by the undisputed evidence, unlike the Program Director positions, possession of the NASD licenses was not immediately necessary for Green to successfully perform the job. R. Lowder Aff., (Doc. no. 28), Ex. L at ¶4; L. Green Supp. Aff., (Doc. no. 28), Ex. M at ¶6. In contrast, the daily functions of the Program Director regarding the

sales and marketing of NASD regulated products required the candidate to possess both the requisite NASD licenses and experience to perform the duties of the job on day one.

Finally, immediately preceding her appointment to the Program Director position, Ms. Green was diagnosed with breast cancer and underwent a bilateral mastectomy in June 2005 as well as six months of chemotherapy treatment following her surgery.  R. Lowder Aff., (Doc. no. 28), Ex. L. at 7; L. Green Supp. Aff. (Doc. no. 28), Ex. M at ¶7.  Even while she was undergoing chemotherapy treatment, she began to prepare for the Series 7 examination in December 2004 and ultimately completed Series 7, 24 and 63 examinations in March, July and December of 2005, respectively.  R. Lowder Aff. (Doc. no. 28), Ex. L. at 7; L. Green Supp. Aff. (Doc. no. 28), Ex. M at ¶7.

In sum, Linda Green is neither a proper comparator, nor is Colonial's treatment of her evidence of discriminatory intent against Plaintiff Guy.

C. **EVEN ASSUMING THAT PLAINTIFF ESTABLISHED HER *PRIMA FACIE* CASE, THE MAGISTRATE CORRECTLY FOUND THAT COLONIAL'S LEGITIMATE, NON-DISCRIMINATORY REASONS FOR PROMOTING SEAN TESORO TO THE PROGRAM DIRECTOR POSITION WERE CLEAR, REASONABLE, AND WORTHY OF CREDENCE.**

Finally, even assuming *arguendo* that Plaintiff could establish a *prima facie* case for each of her claims, she has failed to show that Colonial's proffered legitimate, non-discriminatory reasons for eliminating her position, terminating her employment and promoting Sean Tesoro rather than her to the Program Director position were pretextual.  In particular, Colonial proffered three legitimate, nondiscriminatory reasons for appointing Sean Tesoro rather than Guy to the Program Director position:  (1) Sean Tesoro was more qualified for the position; (2) Wealth Management was unprofitable due, in part, to the poor performance of the Family Insurance section managed by Guy, and (3) Guy was not qualified for the job because she lacked the NASD licenses and experience necessary to develop and coordinate sales training and

15

product support for Colonial's NASD licensed Financial Consultants. Not only is Plaintiff required to present competent evidence to rebut each proffered reason, *see, e.g., Lesch v. Crown & Cork Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002), but also, she must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted), *cert. denied*, 118 S. Ct. 685 (1998). As correctly found by the Magistrate, "Colonial's articulated reason for Tesoro's selection [was] clear, reasonably specific, and worthy of credence", and "Guy has not come forward with any evidence that she was qualified for the new position other than her own conclusory allegations." (Doc. no. 30) at 11. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered . . . extensive evidence of legitimate reasons for its actions.").

### III.  CONCLUSION

In sum, as recommended by Magistrate Judge Boyd, the Court should grant summary judgment in favor of Colonial on all of Plaintiff's claims because she failed to establish her *prima facie* case by failing to establish (1) that she was qualified for the Program Director Position, or (2) that Colonial's decision to promote Sean Tesoro rather than Plaintiff to the position of Program Director was the product of discriminatory animus. Furthermore, even if Plaintiff could establish a *prima facie* case for each of her claims, she failed to establish that Colonial's proffered legitimate, nondiscriminatory reasons for appointing Sean Tesoro were a pretext for discriminating against her on the basis of her age or her gender.

For these reasons, as well as those set forth in Colonial's previously submitted summary judgment briefs, the Court should adopt the Magistrate's Recommendation (Doc. no. 30) and enter summary judgment in Colonial's favor on all of Plaintiff's claims.

                                      Respectfully submitted,

                                      /s/Christopher W. Weller
                                      Christopher W. Weller (WEL030)
                                      **CAPELL & HOWARD, P. C.**
                                      P.O. Box 2069
                                      Montgomery, Alabama 36102-2069
                                      (334) 241-8000

                                      **THE COLONIAL BANCGROUP, INC. & COLONIAL BANK, N.A.**
                                      David B. Byrne, Jr. (ASB-0354-R69D)
                                      General Counsel
                                      One Commerce Street
                                      Montgomery, Alabama 36104

                                      **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel of record *viá* U.S. Mail:

                              Susan Guy, Pro Se
                              974 Lewis Road
                              Deatsville, Alabama 36002

DONE this the 9th day of January, 2007.

                                      /s/Christopher W. Weller
                                      Of Counsel